300 Ga. 682
FINAL COPY

S16A1602. BELLO v. THE STATE.

BLACKWELL, Justice.

In 2013, a Cobb County grand jury indicted Yonatan Yaffitt Bello for sexual exploitation of children, alleging that he unlawfully possessed video recordings that depict children engaged in sexually explicit conduct.[1] Pursuant to OCGA § 17-16-4 (a) (3), Bello demanded that the State produce the video recordings, as well as a written report that was prepared by law enforcement personnel in connection with a forensic examination of Bello's personal computer. The prosecuting attorneys offered to make arrangements for the defense lawyers to inspect those materials at a secure law enforcement facility, but because the materials contain depictions of children engaged in sexually explicit conduct, the prosecuting attorneys refused to provide copies of the

---

[1] See OCGA § 16-12-100 (b) (8) ("It is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct.").

materials to the defense. In support of their position, the prosecuting attorneys cited OCGA § 17-16-4 (a) (3) (B), which provides:

> With respect to any books, papers, documents, photographs, tangible objects, audio and visual tapes, films and recordings, or copies or portions thereof which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial of [a person accused of sexual exploitation of children], *such evidence shall, no later than ten days prior to trial, or as otherwise ordered by the court, be allowed to be inspected by the defendant but shall not be allowed to be copied.*

(Emphasis supplied.)

Bello continued to insist that he was entitled to copies of the video recordings and forensic report, and so, he filed motions to compel the State to produce copies of those materials. Bello claimed in his motions that OCGA § 17-16-4 (a) (3) (B) works a denial of due process, denies the effective assistance of counsel to persons accused of sexual exploitation of children, and is, therefore, unconstitutional, both facially and as applied in this case. In support of these claims, Bello argued that an opportunity to inspect suspected child pornography in a secure law enforcement facility is inadequate — in his case and in all cases — to afford the accused a meaningful opportunity to prepare his

2

defense. The trial court denied the motions, and this appeal followed.[2] We conclude that OCGA § 17-16-4 (a) (3) (B) is constitutional on its face, and based on the record now before the Court, we conclude as well that it is constitutional as applied in this case. Accordingly, the trial court properly denied the motions, and we affirm the judgment below.

1. With respect to due process, our analysis begins with the settled principle that "[t]here is no general constitutional right to discovery in a criminal case."[3] Weatherford v. Bursey, 429 U. S. 545, 559 (III) (97 SCt 837, 51 LE2d 30) (1977). Because the Constitution does not generally entitle the accused to

---

[2] The trial court certified its denial of the motions for immediate review, and Bello filed an application for leave to take an interlocutory appeal, which we granted. See OCGA § 5-6-34 (b). This Court properly has jurisdiction of the subject matter of the appeal because it concerns the constitutionality of a statute. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). The State argues, however, that this appeal does not implicate our constitutional question jurisdiction because the trial court did not explicitly address the constitutionality of the statute in its order denying the motions to compel. We disagree. "Although the trial court's order does not . . . substantively discuss the constitutional issues raised in [Bello's] motion[s], the trial court clearly ruled on the constitutional issues inasmuch as those issues were the only issues raised in the motion[s]." In the Interest of K. R. S., 284 Ga. 853, 853 (1) (672 SE2d 622) (2009).

[3] The constitutional guarantee of due process does require the State to turn over evidence in its possession that is material to guilt or punishment and is favorable to the accused. See Brady v. Maryland, 373 U. S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963). There has been no showing in this case, however, that the video recordings and forensic report in question are favorable to Bello. This appeal is not about the failure of the prosecution to disclose exculpatory evidence.

pretrial discovery, statutory limitations of pretrial discovery are not generally impermissible. See United States v. Shrake, 515 F3d 743, 745 (7th Cir. 2008) ("The Supreme Court has held . . . that defendants are not constitutionally entitled to discovery. It is accordingly hard to see how limits on discovery could be unconstitutional . . . ." (Citations omitted)). The constitutional guarantee of due process does, however, promise that an accused will be afforded a meaningful opportunity to prepare and present a defense, see Chambers v. Mississippi, 410 U. S. 284, 294 (93 SCt 1038, 35 LE2d 297) (1973), and in some cases, the fulfillment of that promise may require the prosecution to allow some pretrial discovery of its case against the accused.

Indeed, this Court has recognized that due process sometimes may require that the accused upon timely request be afforded a meaningful opportunity to have critical evidence against him examined by his own lawyers and experts. For instance, we held in Sabel v. State, 248 Ga. 10, 18 (6) (282 SE2d 61) (1981),[4] that due process demanded that the accused be afforded an opportunity to have paint samples tested by an expert of his choosing. We explained that the

---

[4] Sabel was overruled on other grounds in Rower v. State, 264 Ga. 323, 325 (5) (443 SE2d 839) (1994).

4

State had used an expert comparison of those paint samples to identify the accused as the perpetrator of several acts of vandalism, that the paint samples were, therefore, "critical evidence," and that the evidence was by its nature "subject to varying expert opinion." Id. at 17-18 (6). Likewise, we held in Patterson v. State, 238 Ga. 204, 204-206 (232 SE2d 233) (1977), that one accused of unlawfully possessing marijuana generally must be afforded an opportunity to have the substance that the prosecution has identified as marijuana tested by an expert of his choosing, at least in a case in which the accused disputes the prosecution's identification of the substance and makes a timely and reasonable request for testing.

To the extent that due process requires the prosecution to disclose or make evidence available to the accused, it does not "necessarily require disclosure of evidence in a specific form or manner." United States v. Sturm, 560 FSupp.2d 1021, 1029 (II) (B) (D. Colo. 2007) (citation omitted). And even when due process demands that the accused be afforded an opportunity before trial to have critical evidence tested by an expert of his choosing, it does not always require that the prosecution simply surrender the evidence to the custody and control of the accused and his defense team. Indeed, in Patterson, although we held that

5

one accused of possessing marijuana may be constitutionally entitled to have the suspected marijuana examined by his own expert, we explained that "the defendant does not have an absolute, unqualified right to examine such evidence." 238 Ga. at 206. We recognized the need for "appropriate safeguards to [e]nsure that the evidence is unchanged and preserved for evidentiary use at the trial," and we said that appropriate safeguards "would generally require that the defendant's expert be allowed to examine the substance in the state laboratory under the control and supervision of the state rather than [the prosecution] relinquishing custody and possession of the substance to him." Id. Likewise, in Sabel, we explained that, even when due process demands an opportunity for a defense expert to test critical evidence before trial, "such evidence should remain in the state's control and supervision even if the testing, due to more sophisticated equipment elsewhere, is conducted away from the state laboratory." 248 Ga. at 68 (6).

Turning to the constitutionality of OCGA § 17-16-4 (a) (3) (B), we accept that the video recordings and forensic report are "critical evidence," and we will assume for the purposes of this appeal that the constitutional guarantee of due process entitles Bello to have that evidence subjected to meaningful examination

6

by counsel and a qualified expert of his choosing. Nothing in OCGA § 17-16-4 denies such an examination to the accused. Indeed, OCGA § 17-16-4 (a) (3) (B) explicitly provides that evidence of the sexual exploitation of children "shall . . . be allowed to be inspected by the defendant," and as it is used in that subparagraph, we understand the term "inspect" to carry its usual meaning — "[t]o examine carefully and critically, especially for flaws," The American Heritage Dictionary of the English Language at 935 (3d ed. 1992), or "to view closely and critically (as in order to ascertain quality or state, detect errors, or otherwise appraise)," Webster's Third New International Dictionary at 1170 (1961). See Hendry v. Hendry, 292 Ga. 1, 2 (1) (734 SE2d 46) (2012) ("[A]s we look to the words of a statute, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears." (Citations and punctuation omitted)). As one court has noted, when a discovery statute authorizes an "inspection" of evidence, it may properly be understood to permit not only visual observation, but also "tests and examinations." State ex rel. Remington Arms Co. v. Powers, 552 P2d 1150, 1153 (Okla. 1976).

The statutory right to "inspect" evidence of the sexual exploitation of children is limited, of course, by the provision of OCGA § 17-16-4 (a) (3) (B) that the accused may not obtain copies of such evidence. There are, however, good reasons for such a limitation. To be sure, a request for copies of evidence (as opposed to a request for an original) ordinarily will not implicate serious concerns about the evidence being forever lost or having its integrity irreparably compromised, which were the sorts of concerns that justified the "appropriate safeguards" that we discussed in Sabel and Patterson. See, e.g., Patterson, 238 Ga. at 206 (discussing appropriate safeguards to ensure that evidence is "unchanged and preserved for evidentiary use at the trial"). But when the evidence in question contains depictions of children engaged in sexually explicit conduct that would be, if copied and relinquished to another, readily susceptible of further duplication and dissemination, the government has a compelling interest in retaining custody and control of the depictions. See United States v. Johnson, 456 FSupp2d 1016, 1019 (N.D. Iowa 2006) (18 USC § 3509 (m), which limits discovery of evidence constituting child pornography, is intended "to prevent the unnecessary distribution of child pornography used in

8

connection with criminal trials" and "to ensure that the child pornography used in criminal trials does not escape into the public domain").

Bello contends that OCGA § 17-16-4 (a) (3) (B) is unconstitutional both facially and as applied in his case. A facial challenge "is, of course, the most difficult challenge to mount successfully," United States v. Salerno, 481 U. S. 739, 745 (II) (107 SCt 2095, 95 LE2d 697) (1987), because it requires one to establish "that no set of circumstances exists under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep." Blevins v. Dade County Bd. of Tax Assessors, 288 Ga. 113, 118 (3) (702 SE2d 145) (2010) (citation and punctuation omitted). Even when the accused is constitutionally entitled to have suspected child pornography examined by counsel and an expert of his choosing, OCGA § 17-16-4 (a) (3) (B) accommodates the demands of due process by allowing the defense to "inspect" the evidence, which permits the defense (as we have explained) to carefully and closely scrutinize the evidence, although the evidence must remain at all times in the custody and control of the State. So long as the inspection authorized by OCGA § 17-16-4 (a) (3) (B) affords the accused a meaningful opportunity to prepare his defense, the

9

statutory "restrictions on custody, care, control and copying are reasonable," Johnson, 456 FSupp.2d at 1019, and "reasonable limits on defense counsel's access to the child pornography at issue in a criminal case [do not] raise constitutional concerns." See Doe v. Boland, 630 F3d 491, 496 (II) (6th Cir. 2011). See also Sabel, 248 Ga. at 18 (6); Patterson, 238 Ga. at 206. At oral argument in this Court, Bello's lawyer conceded that "it may be possible in some instances, but not necessarily in all," for counsel and a defense expert to undertake a meaningful examination of suspected child pornography by inspecting the evidence within the confines of a secure law enforcement facility, just as OCGA § 17-16-4 (a) (3) (B) permits. The statute does not lack a "plainly legitimate sweep," and this concession is fatal to Bello's facial challenge.[5]

As for the contention that OCGA § 17-16-4 (a) (3) (B) is unconstitutional as applied in this case, it is likewise without merit, at least based upon the

---

[5] In federal prosecutions involving child pornography, evidence that constitutes child pornography ordinarily must "remain in the care, custody, and control of either the Government or the court." 18 USC § 3509 (m) (1). The accused is not entitled to copies of such evidence "so long as the Government makes the property or material reasonably available to the defendant," 18 USC § 3509 (m) (2) (A), and the evidence is deemed to be "reasonably available to the defendant" "if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility" by the defendant, his counsel, or a defense expert. 18 USC § 3509 (m) (2) (B). The federal courts have repeatedly upheld the constitutionality of 18 USC § 3509 (m). See United States v. Spivack, 528 FSupp.2d 103, 105 (III) (A) (E.D. N.Y. 2007) (citing cases).

current record. "An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." Hertz v. Bennett, 294 Ga. 62, 66 (2) (c) (751 SE2d 90) (2013) (citation and punctuation omitted). In the trial court, Bello demanded copies of the video recordings and forensic report, and although the prosecuting attorneys refused to provide copies, they offered to make arrangements for his lawyers to inspect the evidence at a secure law enforcement facility. It is unclear to what extent the defense attempted to examine the evidence at such a facility. There is some indication in the record that a defense lawyer visited the office of the prosecuting attorneys to review the forensic report, but there is nothing in the record about the nature or adequacy of that review, other than the bald conclusion of defense counsel that "it's not enough." The record shows nothing at all about any efforts to have a defense expert examine the evidence at a secure facility. And perhaps most important, the record is utterly silent about what, if anything, defense lawyers or an expert might want or need to do with the materials to prepare a defense that they could not do within the confines of a law enforcement facility. Indeed, at oral argument, Bello's lawyer admitted that he was never denied permission to have an expert inspect the evidence at a secure

11

facility, and he has altogether failed to show that such an inspection would be inadequate to meaningfully test the State's evidence against him. See United States v. Spivack, 528 FSupp.2d 103, 107 (III) (A) (E.D. N.Y. 2007).

Instead, Bello just insists that he ought to have copies, and the refusal of the prosecuting attorneys to make copies for him, he says, is a denial of due process. But as we have explained in connection with the facial challenge, such a refusal is not unconstitutional if the accused nevertheless has a meaningful opportunity to examine the evidence and prepare his defense. In the absence of a record to show that an inspection permitted by OCGA § 17-16-4 (a) (3) (B) would not be adequate to permit Bello to meaningfully prepare a defense, he cannot establish that a refusal of copies works a denial of due process. Accordingly, Bello has not demonstrated that the requirements of OCGA § 17-16-4 (a) (3) (B) "are inadequate to ensure due process in this case, so his as-applied challenge fails." Sturm, 560 FSupp.2d at 1028 (II) (B) ("Sturm's argument boils down to an equation: reasonable availability equals possession of a bit-by-bit copy. . . . [T]he Due Process Clause does not direct that result."). See also Boland, 630 F3d at 496 ("The defendant could have worked with the

12

district court and the government to ensure that he could put on the defense he wanted. But he chose not to." (Citations and punctuation omitted)).

2. As for the claim that OCGA § 17-16-4 (a) (3) (B) denies the effective assistance of counsel, it fails for the same reasons as the due process claim. To begin, we note that some federal courts addressing constitutional challenges to the federal statute that limits defense access to materials containing child pornography have essentially conflated the due process and assistance of counsel inquiries. See, e.g., Spivack, 528 FSupp.2d at 105 (III); United States v. Battaglia, Case No. 5:07CR0055, 2007 U.S. Dist. LEXIS 45773, *10 (N.D. Ohio, decided June 25, 2007). We need not decide in this case, however, whether the inquiries always are perfectly coextensive. Here, Bello cites no authority to suggest that the constitutional guarantee of the right to counsel offers greater or different protections in this particular context than the guarantee of due process, and he instead makes essentially the same arguments in support of both claims. If OCGA § 17-16-4 (a) (3) (B) does not preclude the defense in all or most cases from having a meaningful opportunity to prepare a defense for purposes of due process, we fail to see how it facially violates the guarantee of the effective assistance of counsel. And because Bello has failed

to make any record to show that he especially cannot prepare a defense under the restrictions imposed by the statute, we likewise fail to see how the statute as applied in this case violates his right to the effective assistance of counsel. The trial court properly rejected the claims that OCGA § 17-16-4 (a) (3) (B) denies the effective assistance of counsel.

3. As an alternative ground for their refusal to provide copies of the video recordings and forensic report to Bello, the prosecuting attorneys noted that the possession of material that depicts minor children engaged in sexually explicit acts is a crime, see OCGA § 16-12-100 (b) (8), and although there is a limited exception that permits prosecutors and law enforcement personnel to handle such materials in connection with criminal investigations and prosecutions, see OCGA § 16-12-100 (d) (1), there is no similar exception for defense lawyers. In his motions to compel, Bello also contended that the absence of a statutory exception permitting defense lawyers to possess child pornography is unconstitutional. This claim fails, however, for the same reasons that his claim about the constitutionality of OCGA § 17-16-4 (a) (3) (B) fails. If the Constitution allows the government to insist that materials containing child pornography remain in the custody and control of government agents,

14

forbidding non-government lawyers from taking custody and control of child pornography is equally permissible.[6]

4. The trial court properly denied the motions to compel, and its judgment is affirmed.

Judgment affirmed. All the Justices concur.

Decided March 6, 2017.

OCGA § 17-16-4 (a) (3) (B); constitutional question. Cobb Superior Court. Before Judge Staley.

Kilgore & Rodriguez, H. Maddox Kilgore, Carlos J. Rodriguez, for appellant.

D. Victor Reynolds, District Attorney, John R. Edwards, Hannah M. Palmquist, Assistant District Attorneys, for appellee.

---

[6] The State does not take the position that OCGA § 16-12-100 forbids defense lawyers or experts to handle materials containing child pornography within the confines of a secure law enforcement facility, in which the government maintains custody and control of the materials at all times.