304 Ga. 652
FINAL COPY

S18A1305. HARRIS v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, James S. Harris, Jr., appeals his conviction for murder and related crimes, contending that he received ineffective assistance of counsel.[1] For the reasons set forth below, we affirm.

_____

[1] On May 24, 2014, Harris was indicted for the malice murder of Barry Williams, two counts of felony murder of Williams, aggravated assault of Dominique Ellison, two counts of possession of a firearm during the commission of a felony (one for the murder of Williams and one for the aggravated assault of Ellison), and possession of a firearm by a convicted felon. Following a jury trial on October 26-27, 2015, Harris was found guilty of all counts. The trial court sentenced Harris to life imprisonment for malice murder, 20 consecutive years for the aggravated assault of Ellison, five consecutive years for possession of a firearm during the commission of murder, five concurrent years for possession of a firearm during the commission of the aggravated assault, and five concurrent years for possession of a firearm by a convicted felon. The convictions for felony murder were vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On November 10, 2015, Harris timely filed a motion for new trial, which was amended on May 2, 2016. After a hearing on August 15, 2016, the trial court denied the motion. Thereafter, Harris timely filed a notice of appeal on February 23, 2018, and his appeal was docketed to the August 2018 term of this Court and submitted for decision on the briefs.

1. In the light most favorable to the verdict, the evidence shows that, on the evening of March 17, 2014, Dominique Ellison and Barry Williams were walking to Ellison's house. As they did so, Harris shot at the two men multiple times, wounding Ellison and killing Williams. An eyewitness saw the shooter standing over Williams's body and shooting him.[2] Ellison fled to the nearby home of an acquaintance, Tracie Roberson. Although Ellison initially stated at the scene that he did not know who shot him, he later identified Harris, whom Ellison knew as "Sambo." Ellison was familiar with Harris as someone who lived in his neighborhood. Ellison first identified Harris when interviewed by police in his hospital room two days after the shooting. He then affirmed this identification in a photo lineup and, again, at trial.

At the scene of the shooting, investigating officers discovered a cell phone that had been dropped or discarded in a nearby vacant lot. Law enforcement found a contact titled "Sis" in the abandoned phone, which corresponded with a number belonging to Harris's sister. Police also discovered a text message calling Harris by his nickname "Sambo," and notifications for 80 missed calls,

---

[2] This eyewitness did not identify the shooter.

2

some of which were from Harris's girlfriend. In addition, police recovered six shell casings, all fired from the same gun.

This evidence was sufficient to enable the jury to find Harris guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[3]

2. Harris argues that his trial counsel rendered ineffective assistance by failing to: (a) question Ellison and other potential witnesses about every time he told another person that he did not know who shot him; (b) question Ellison and other potential witnesses about every time that he told another person that the shooter was in a car, not on foot; and (c) object to allegedly improper opinion testimony from the lead detective that bolstered Ellison's testimony.

> In order to succeed on his claim of ineffective assistance, [Harris] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga.

---

[3] Harris does not dispute the sufficiency of the evidence; however, consistent with our practice in murder cases, we have reviewed the sufficiency nonetheless.

505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Furthermore, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) McNair v. State, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014). Moreover, "'hindsight has no place in an assessment of the performance of trial counsel,' and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." (Citation omitted.) Shaw v. State, 292 Ga. 871, 876 (3) (a) n.9 (742 SE2d 707) (2013).

(a) Harris first argues that his trial counsel rendered ineffective assistance by failing to question Ellison about each and every time he told another person that he did not know who shot him. Harris contends that Ellison told Roberson and Officer David Barker at the scene that he did not know who shot him, and, after he had been transported to the hospital, but still on the same day as the

4

shooting, he told Detective Santoro that he did not know who shot him. He also contends that Roberson's sister, Ketia Miller, overheard Ellison's conversations with Roberson. Of these alleged witnesses, only Roberson testified at trial, and none of the alleged witnesses testified at the hearing on Harris's motion for new trial.

Instead of presenting testimony from these witnesses at the hearing, Harris relies on unsworn statements made by them in police reports and interviews. With regard to the purported witnesses who never testified, Harris "must introduce either testimony from the uncalled witness or a legally recognized substitute for his [or her] testimony." (Citations omitted.) Manriquez v. State, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009). He may not rely on hearsay and speculation to prove ineffective assistance. Id. Here, Harris called none of these witnesses to testify at the motion for new trial hearing. Instead, he merely relied on unsworn police reports and interviews, which are not appropriate substitutes for testimony. Id. Therefore, Harris provides no evidentiary basis to make even a threshold claim of prejudice, which he bears the burden of proving. Because Harris has failed to show prejudice as to these other witnesses, his claim of ineffective assistance of counsel fails in that regard.

5

In any event, the transcript shows that trial counsel *did* ask Ellison about his initial inability to name the shooter. The following questioning took place on cross-examination:

> DEFENSE: And at the time, you were asked what happened to you. Is that right?
> ELLISON: Yes, sir.
> DEFENSE: And you said you didn't know what happened. You didn't know who shot you. Isn't that correct?
> ELLISON: Yes, sir.

So, trial counsel did, in fact, elicit an admission from Ellison that, when asked what happened to him at the time of the shooting, he answered that he did not know who shot him. In addition, when Roberson testified, trial counsel also questioned her about Ellison's statements at the scene; however, Roberson responded that she did not recall what was said.

Therefore, the evidence about which Harris now complains — that Ellison did not or could not identify his shooter on the day that he was shot — was, in fact, placed before the jury.

(b) Harris argues that his trial counsel rendered ineffective assistance by failing to question Ellison about every time that he told another person that the shooter may have been in a car, not on foot. Harris contends that, in an interview

6

with Detective Puhala, Roberson stated that Ellison told a "police lady" at the scene that his assailant had been in a car, not on foot. He also maintains that, when interviewed by Detective Santoro at the hospital on the day of the shooting, Ellison stated, "I was walking down the street and I heard the car. That's all I know." He further argues that Miller, Roberson's sister, once again overheard the conversation.

With the exception of Detective Puhala, who was a witness called by the State at trial, none of the other alleged impeaching witnesses testified at trial, and Harris did not call any of them, including Detective Puhala, at the hearing on the motion for new trial. Nor did he call Ellison at the hearing to show what additional cross-examination would have yielded. Once again, Harris attempts to support his claim of ineffective assistance with unsworn statements made to police, but unsworn statements to police are not a legally acceptable substitute for witness testimony needed to prove prejudice. See Manriquez, supra. The result is that Harris, who has the burden to show prejudice, has provided no evidence supporting his claim that prejudice occurred, and his contention must fail.

(c) Finally, Harris argues that his trial counsel rendered ineffective

assistance by failing to object to allegedly improper opinion testimony from Detective Puhala.[4]

During the direct examination of Detective Puhala, the following exchange occurred:

> STATE: Detective Puhala, how many shootings have you investigated?
> DETECTIVE PUHALA: I've been the lead detective on fifteen homicides. I've been part of at least a hundred other homicide investigations. I've conducted well over an additional hundred death investigations, to include suicides, natural deaths, things of that nature.
> STATE: In your experience, is it unusual for someone who has been shot to fail to identify someone right away?
> DETECTIVE PUHALA: No. It happens more often than not, actually.
> STATE: Okay, and is there a pattern to how that happens? Is there a reason why it happens?
> DETECTIVE PUHALA: Generally speaking, they just — after a victim is shot and is, you know, conscious at the scene, they just want to get help, because they don't want to answer any questions, so they just say[,] "I don't know," and then they — you know, it's just so they can get to the hospital. And then when you go and talk to them later, they're more willing to talk to you. Sometimes they know who did it and sometimes they don't, but they tell you the whole story about what happened.
> STATE: And is that basically the pattern that you saw here?
> DETECTIVE PUHALA: Yes.

Specifically, Harris argues that this testimony was improper because it

---

[4] Detective Puhala was not offered as an expert witness.

bolstered Ellison's testimony. We disagree.

> "A witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury." Manzano v. State, 282 Ga. 557, 560 (3) (b) (651 SE2d 661) (2007) (citation and punctuation omitted); see also Butler v. State, 292 Ga. 400, 405 (3) (a) (738 SE2d 74) (2013) (trial witness may not comment on a witness's credibility or lack thereof); OCGA § 24-6-620 ("The credibility of a witness shall be a matter to be determined by the trier of fact, and if the case is being heard by a jury, the court shall give the jury proper instructions as to the credibility of a witness."). In considering whether testimony constitutes improper bolstering, we consider the objected-to testimony in context. See Marshall v. State, 276 Ga. 854, 856 (2) (a) (583 SE2d 884) (2003); see also Wiggins v. State, 338 Ga. App. 273, 280 (4) (787 SE2d 357) (2016); Strickland v. State, 311 Ga. App. 400, 403 (2) (a) (715 SE2d 798) (2011).

(Footnote omitted.) Adkins v. State, 301 Ga. 153, 158 (3) (a) (800 SE2d 341) (2017).[5] See also Jones v. State, 299 Ga. 40 (3) (785 SE2d 886) (2016) (no plain error from admission of testimony from GBI investigator which did not directly speak to truthfulness of another witness).

Viewed in context, Detective Puhala's testimony was not a direct

---

[5] With regard to OCGA § 24-6-620, "[t]his provision of the new Evidence Code carried forward with minor revisions former OCGA § 24-9-80, which provided, 'The credibility of a witness is a matter to be determined by the jury under proper instructions from the court.' See Scudder v. State, 298 Ga. 438, 440 (3) n. 3 (782 SE2d 638) (2016)." Adkins, supra at 158 (3) (a) n. 2.

comment on Ellison's veracity. "When a witness's statement does not directly address the credibility of another witness, . . . there is no improper bolstering." Brown v. State, 302 Ga. 454, 460-461 (2) (b) (807 SE2d 369) (2017). Therefore, any objection to Detective Puhala's testimony as improper bolstering would have been meritless, and "[f]ailure to make a meritless objection cannot support a claim of ineffective assistance." (Citation omitted.) Watson v. State, 303 Ga. 758, 763 (3) (814 SE2d 396) (2018).

Judgment affirmed. All the Justices concur.

Decided November 5, 2018.

Murder. Chatham Superior Court. Before Judge Walmsley.

Steven L. Sparger, for appellant.

Meg Heap, District Attorney, Christine S. Barker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.