306 Ga. 140
FINAL COPY

S19A0164.  DAVIS v. THE STATE.
S19A0416.  BEAMON v. THE STATE.

BETHEL, Justice.

William Darnell Davis and Trinika Beamon appeal from the trial court's denial of their motions for new trial after a jury found them guilty of felony murder and related crimes in connection with the death of T'arsha Williams and the aggravated assault of Julius Larry.[1]  In Case No. S19A0164, Davis argues that the trial court

---

[1] On March 18, 2015, a Chatham County grand jury indicted Davis and Beamon, as well as their accomplice Taylor LaCount, for felony murder predicated on criminal attempt to commit armed robbery of Williams (Count 1), felony murder predicated on aggravated assault with a deadly weapon of Williams (Count 2), criminal attempt to commit armed robbery of Williams (Count 3), aggravated assault with a deadly weapon of Williams (Count 4), criminal attempt to commit armed robbery of Larry (Count 5), and conspiracy to commit armed robbery (Count 6).  LaCount's case is not part of this appeal.  Following a June 2017 jury trial, both Davis and Beamon were found guilty on all charges.

The trial court sentenced Davis to life in prison on Count 1 and 20 years consecutive on Count 5. Count 2 was vacated by operation of law, and the trial court merged all other counts with Count 1.  Davis filed a motion for new trial on July 3, 2017, which he amended on January 16, 2018.  After a hearing, the trial court denied the motion as amended on March 21, 2018.  Davis filed a notice of appeal to this Court on April 5, 2018, and this case was docketed in this Court to the term beginning in December 2018 and submitted for a

erred in not applying the rule of lenity in sentencing him and that his trial counsel was ineffective in numerous regards. In Case No. S19A0416, Beamon argues that Georgia's felony murder statute is unconstitutional and that the evidence was insufficient to support her convictions. For the reasons explained below, we conclude that Davis's and Beamon's contentions are without merit, and we affirm their convictions.

1. Viewed in the light most favorable to the jury's verdicts, the evidence showed that, on November 15, 2014, Williams and Larry went to the Club Rain nightclub in downtown Savannah to celebrate the impending birth of Williams's child. Larry, the surviving victim, testified that both men were carrying a significant amount of cash,

---

decision on the briefs.

Beamon was sentenced to life in prison on Count 1 and 15 years concurrent on Count 5. Count 2 was vacated by operation of law, and the trial court merged all other counts with Count 1. Beamon filed a motion for new trial on July 5, 2017; she amended that motion on March 7, 2018. Following a hearing, the trial court denied the motion as amended on June 11, 2018. Beamon filed a notice of appeal to this Court on July 9, 2018. This case was docketed in this Court to the term beginning in December 2018 and submitted for a decision on the briefs.

which they were "flashing" for others to see. While at the club, they encountered Davis, with whom Larry was familiar through Facebook. Davis, who was at the club with Beamon and their co-defendant Taylor LaCount, told Larry that Beamon and LaCount were interested in having sex with Williams and Larry. Williams and Larry likewise expressed interest in engaging with the women, and Davis instructed Williams and Larry to wait for him and the women outside the club. Beamon and LaCount soon exited the club and began conversing with Williams and Larry; Davis joined them shortly thereafter.[2] Davis, Beamon, and LaCount told Williams and Larry that they had to go to one of the women's grandmother's house in west Savannah, so they gave Williams and Larry a phone number to arrange a rendezvous later that night.

In the meantime, Williams and Larry went to a convenience store to buy beer and condoms and then to Larry's house to retrieve Larry's pistol because they "knew something was about to happen"

---

[2] Surveillance video footage corroborated this portion of Larry's testimony.

3

and thought they might be robbed. Williams and Larry received a call from LaCount, who instructed Williams and Larry to meet them in west Savannah. When they reached the meet-up location, Davis exited LaCount's truck, which he was driving, and walked over to Williams's car. Davis instructed Williams, who was driving, to follow him around the corner in his car. Both vehicles parked, and Larry moved from the front seat to the back seat of Williams's vehicle. The women exited the truck, but when they reached Williams's car, rather than getting into the vehicle, they turned and ran. At that time, an unidentified, armed man had reached Williams's window and was pointing his gun at Williams. Williams instructed Larry to shoot the man, and Larry began shooting; the unidentified man returned fire. At some point, Williams was shot by the unidentified man. Larry, realizing that Williams was dead, leaned into the front seat and, using his hands to push Williams's foot down on the gas pedal, drove the car away from the scene. Larry crashed the car into a front yard and fled the vehicle on foot.

LaCount entered a guilty plea and testified for the State. She

testified that, on the day of the incident, she met Davis for the first time, and they went on a date. Beamon joined them later, and the three went to Club Rain together. While there, they observed Williams and Larry flashing their money, and, when they were leaving the club, Davis indicated that he was planning to rob the two men. The three got into LaCount's truck, with Davis driving, LaCount in the front passenger seat, and Beamon in the back seat. While in the truck, Davis was "plotting and scheming" as to how he would take Williams's money; he asked LaCount to distract Williams and instructed Beamon to follow LaCount. Davis then called an unidentified, armed man and drove to pick him up. The man got in the back seat with Beamon, and Davis continued planning the robbery. Beamon said the robbery was not a good idea, and LaCount agreed with her. When they met back up with Williams and Larry, both Beamon and LaCount exited the truck, as did the unidentified man. Per Davis's instruction, LaCount went toward the front passenger seat, and Beamon went toward the back seat. Both women opened the car's doors to get inside, but neither

5

had a chance to get in the car. The unidentified man, pursuant to Davis's instruction, had reached the driver's side of Williams's car, and LaCount heard Williams tell Larry to shoot the man. When Larry started shooting, everyone scattered.

Davis and Beamon pursued the same defense at trial: both disclaimed any knowledge of the planning of the crime and sought to pin the blame on LaCount. Davis testified in his own defense. He testified that, after leaving the club, he drove to his sister's house so that he could use her bathroom. He and Beamon went inside the home, and, when they came out, they found LaCount talking to two unidentified men who asked Davis to take them to the store. LaCount directed Davis where to drive but said she needed to make another stop before going to the store. When they reached LaCount's destination, they stopped for several minutes until Williams's car pulled up. Then, LaCount, Beamon, and the two men exited the vehicle. Davis heard gunshots and saw LaCount, Beamon, and the men start to run, so he put the car in drive and pulled off. Davis denied seeing that either man was armed and denied planning

6

the robbery, as LaCount testified. Beamon did not testify.

Although only Beamon challenges the sufficiency of the evidence supporting her convictions, we have reviewed the evidence in regard to both appellants and conclude that the evidence recounted above was sufficient to authorize a rational jury to find both Davis and Beamon guilty beyond a reasonable doubt on each of the counts of which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to a crime).

*Case No. S19A0164*

2. Davis contends that the trial court erred in failing to apply the rule of lenity when sentencing him. Specifically, Davis argues that the trial court was obligated, pursuant to the rule of lenity, to sentence him for aggravated assault with intent to rob rather than criminal attempt to commit armed robbery. This argument rests on a fundamental misunderstanding of the proper application of the rule of lenity as raised here and thus fails.

As we recently explained in *State v. Hanna*, 305 Ga. 100, 105

7

(2) (823 SE2d 785) (2019):

> Although the rule of lenity may require a court to reverse a *conviction* based upon the violation of a statutory provision that has been effectively abrogated by a duplicative provision imposing a lesser penalty, the rule does not allow the court to impose a *sentence* for an offense different than the one unambiguously provided for in the statute [of] which the defendant . . . was found guilty.

(Emphasis in original.) Here, Davis was not charged with or convicted of aggravated assault with intent to rob, and he has not challenged his prosecution for attempted armed robbery. Instead, he was convicted of criminal attempt to commit armed robbery and was sentenced accordingly.[3] Thus, the trial court did not err.

3. Davis next contends that he was denied the effective

---

[3] Even if Davis had invoked the rule of lenity to challenge his conviction, it would be unavailing — aggravated assault with intent to rob and intent to commit armed robbery do not have the same elements and are not the same offense. The crime of criminal attempt to commit armed robbery requires the State to prove that the defendant, with the intent to commit theft, took a substantial step toward taking the property of another by use of an offensive weapon or replica thereof. See OCGA §§ 16-4-1, 16-8-41 (a). Aggravated assault with intent to rob requires the State to prove the defendant committed an assault against another with the intent to rob. See OCGA § 16-5-21 (a) (1). Criminal attempt to commit armed robbery (unlike aggravated assault with intent to rob) does not require the actual commission of an assault, and aggravated assault with intent to rob (unlike criminal attempt to commit armed robbery) does not require the actual or contemplated use of an offensive weapon or replica thereof.

assistance of counsel. To succeed on this claim, Davis must satisfy a two-part test: that his counsel's performance was professionally deficient and that he was prejudiced by the deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant is unable to satisfy one prong of the *Strickland* test, "it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) *Grant v. State*, 305 Ga. 170, 175 (5) (824 SE2d 255) (2019).

"To prove deficient performance, [Davis] must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Importantly, our inquiry is focused on the "objective reasonableness of counsel's performance, not counsel's subjective state of mind." (Citation and punctuation omitted.) *Hartsfield v. State*, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014). Counsel's reasonableness is evaluated in conjunction with the attendant circumstances of the challenged conduct and judged from counsel's

perspective at the time with "every effort . . . made to eliminate the distorting effects of hindsight." (Citation and punctuation omitted.) *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018). Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed.

To satisfy the prejudice prong, Davis must demonstrate "a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Wainwright v. State*, 305 Ga. 63, 68 (3) (823 SE2d 749) (2019). As we have said before, satisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance. An appellant bears the burden of satisfying *both* prongs of the *Strickland* test. And we emphasize that this Court is not required to scour the record for support for an appellant's arguments.

(a) Davis first contends that his trial counsel erred in failing to object to certain portions of the State's opening argument.

10

Specifically, Davis takes issue with the State's playing for the jury a video recording of the crime scene and portions of an audio recording of Beamon's statement to police, as well as displaying "a very graphic photograph" of the crime scene. The video, audio recording, and photograph were all admitted into evidence without objection later in the trial.

Davis has failed to demonstrate that trial counsel's failure to object constitutes deficient performance. At the hearing on Davis's motion for new trial, his trial counsel testified that he knew the video, audio recording, and crime scene photograph would all be properly admitted into evidence and that "[i]t's not advisable to make frivolous objections." As discussed below in Division 2 (b), this evidence was, in fact, admissible. "Whether to object to the content of an opening statement is a tactical decision, and trial counsel's reasonable tactical decision not to object during opening statements does not generally qualify as deficient performance." (Citation and punctuation omitted.) *Robinson v. State*, 298 Ga. 455, 463 (6) (782 SE2d 657) (2016). Davis has not shown that his trial counsel's

11

decision not to object was unreasonable; thus, counsel's tactical decision in this regard will not support a finding of deficient performance. See *Moss v. State*, 298 Ga. 613, 618 (5) (b) (783 SE2d 652) (2016) ("A lawyer is not required to make an objection that he reasonably believes will fail.").

(b) Davis next argues that his trial counsel rendered ineffective assistance by failing to object to the admission of the State's exhibits and video presentation discussed above, which all included "very graphic and prejudicial" images of the crime scene and Williams's body. Davis points only to OCGA § 24-4-403[4] ("Rule 403") in support of this claim, but, other than noting their gruesome nature, he fails to explain how the images were unfairly prejudicial to him.

We have held that "photographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant

---

[4] "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

12

purpose is not generally inadmissible under Rule 403 merely because it is gruesome." *Plez v. State*, 300 Ga. 505, 508 (3) (796 SE2d 704) (2017). And "[a]s [crime scene] photos in murder cases go, these were not especially gory or gruesome." *Moss*, 298 Ga. at 617 (5) (b). Moreover, the photographs were relevant to the victim's identity and his manner of death, as well as to corroborate Larry's and LaCount's testimony. See *Moss*, 298 Ga. at 617-618 (5) (b). See also *Favors v. State*, 305 Ga. 366, 369 (2) (825 SE2d 164) (2019) (photographs depicting gunshot victim at crime scene properly admitted under Rule 403 to show "the nature and location of the victim's injuries, which corroborated the State's evidence of the circumstances of the killing" (citation and punctuation omitted)). Davis's trial counsel testified at the motion for new trial hearing that he did not believe an objection was advisable under the circumstances. And because "[a] lawyer is not required to make an objection that he reasonably believes will fail," *Moss*, 298 Ga. at 618 (5) (b), Davis has not established that his trial counsel was deficient in this regard.

(c) Davis's third claim of ineffective assistance concerns the

13

same photographic evidence complained of above, though, in this instance, Davis alleges his trial counsel was ineffective for failing to object to the State's presentation of the photographs to the jury a second time. In support of this claim, Davis argues that, had trial counsel objected, the photographs would have been excluded as cumulative evidence pursuant to Rule 403. But simply because more than one witness discussed the photographs does not make the photographs cumulative. See Black's Law Dictionary (10th ed. 2014) (defining "cumulative evidence" as "[a]dditional evidence that supports a fact established by the existing evidence"). The second use of the photographs was a second use of the same evidence for different purposes with an additional witness. The photographs at issue, as discussed previously, were not rendered inadmissible by Rule 403, and Davis has set forth no other ground on which his trial counsel could have successfully objected to the admission of the photographs. Accordingly, Davis has not shown that trial counsel performed deficiently because, again, "[a] lawyer is not required to make an objection that he reasonably believes will fail." *Moss*, 298

14

Ga. at 618 (5) (b).

(d) Turning to Davis's fourth claim of ineffective assistance, he argues that trial counsel was ineffective in failing to object to hypothetical questions the State posed to an expert witness, which Davis argues were phrased in a way that bolstered the testimony of Larry. During its direct examination of the forensic pathologist, who testified before Larry, the State asked whether Williams's wounds were consistent with the account of the shooting Larry provided to investigating officers. The pathologist responded affirmatively, with no direct comment on Larry's credibility. Davis "has not offered a basis for the proposed objection[ ] other than vaguely asserting that the [questions were] 'bolstering.' Because he has not shown that objections to [these questions] would have been successful, [Davis] has failed to show that his trial counsel performed deficiently by not objecting." *Gomez v. State*, 301 Ga. 445, 467 (12) (d) (801 SE2d 847) (2017).

(e) Davis next argues in support of his claim of ineffective assistance that his trial counsel failed to perform a thorough cross-

examination of LaCount regarding her plea agreement, namely that he did not bring to the jury's attention the fact that LaCount could face no jail time or that, had she proceeded to trial and been found guilty, LaCount would have been required to serve a minimum of 30 years in prison before being eligible for parole. We are not persuaded.

The record shows that, on direct examination, LaCount testified that she entered a guilty plea to voluntary manslaughter, two counts of attempted armed robbery, aggravated assault, and conspiracy to commit armed robbery but that she had not yet been sentenced. Davis's trial counsel cross-examined LaCount about her plea agreement, and LaCount conceded that, absent the agreement, she faced "life plus thirty [years]" imprisonment. Counsel also elicited from LaCount an admission that she was motivated to testify by the possibility of avoiding a lengthy prison term.

"Decisions about what particular questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether

to impeach prosecution witnesses and how to do so are tactical decisions." (Citation and punctuation omitted.) *Smith v. State*, 303 Ga. 643, 648 (II) (B) (814 SE2d 411) (2018). Here, the record clearly reflects that Davis's trial counsel elicited testimony from LaCount about her potential sentence and her motive for testifying for the State. Davis has not shown that his counsel's approach to impeaching LaCount was unreasonable, and he has thus failed to demonstrate that his trial counsel's cross-examination of LaCount constituted deficient performance. See id.; *Romer*, 293 Ga. at 344 (3) (a). Therefore, this claim also fails.

(f) Davis's next two claims of ineffective assistance concern trial counsel's failure to object on numerous occasions during the testimony of Detective Eric Smith, the lead detective on the case. During an extended colloquy between the State and the detective, Detective Smith repeatedly confirmed that Larry's account of the crime was consistent with his investigation, as depicted in photographs taken at the crime scene and surveillance videos recovered during the course of Smith's investigation, all of which

17

were admitted into evidence and published to the jury before Smith testified. Davis now argues that, by failing to object to this testimony, his trial counsel permitted the detective to improperly bolster Larry's testimony.

As we have explained:

> [I]t is improper to ask a testifying witness whether another witness is lying. The Eleventh Circuit has held that it is often necessary to focus a witness on the differences and similarities between his testimony and that of another witness. This is permissible provided he is not asked to testify as to the veracity of the other witness.

(Citation, punctuation and emphasis omitted.) *Jones v. State*, 299 Ga. 40, 43 (3) (785 SE2d 886) (2016).[5] *Jones* addressed a claim of improper bolstering where, similar to the testimony at issue here, a crime scene investigator was asked by the State whether "she was able to corroborate much of the information that [a witness]

---

[5] See *Jones*, 299 Ga. at 44 (3), n.4 ("Our new Evidence Code was based in large part on the Federal Rules of Evidence. And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." (citation and punctuation omitted)).

provided to her, and whether the information that [the witness] provided to her turned out to be more consistent with other evidence she had obtained than the information that [the appellant] had provided to her." Id. at 44 (3). Here, as we concluded in *Jones*, Smith's testimony "did not speak directly to [Larry's] truthfulness." Id. Instead, the testimony "involved whether aspects of [Smith's] investigation lined up with information provided by" Larry. Id. As such, Davis's argument is without merit.[6]

(g) Davis further argues that his trial counsel was deficient for failing to object when Detective Smith commented on Larry's veracity, thereby impermissibly bolstering Larry's testimony. Davis points to the following exchange between the State and Detective Smith:

STATE:   Did all of this portion of [a surveillance] video

---

[6] We note that counsel for Davis has raised claims of improper bolstering in multiple cases and has submitted the same supporting argument as he submitted in this case, word-for-word, in *Jones v. State*, 305 Ga. 750, 754 (827 SE2d 879) (2019), *Koonce v. State*, 305 Ga. 671, 674-675, 677-678 (827 SE2d 633) (2019), and *Harris v. State*, 304 Ga. 652, 656 (2) (c) (821 SE2d 346) (2018). We rejected the argument in each case and emphasize now for the benefit of counsel that "[w]hen a witness's statement does not directly address the credibility of another witness, there is no improper bolstering." (Citation and punctuation omitted.) *Harris*, 304 Ga. at 657 (2) (c).

19

support what [Larry] told you?

SMITH: Yes, it does.

STATE: And did it contradict what the Defendant Beamon told you?

SMITH: Yes, it does.

STATE: Which one was telling you the truth?

SMITH: It appears that Larry was telling it.

In contrast to the testimony highlighted in Division 3 (f), Detective Smith's testimony here spoke directly to Larry's truthfulness. Thus, an objection on this point would not have been meritless. See *Jones*, 299 Ga. at 43 (3).

Nevertheless, our review of the record shows that counsel's failure to object was strategic. Indeed, counsel attempted to use Larry's testimony and the State's bolstering of Larry's credibility to Davis's advantage, emphasizing inconsistencies between Larry's testimony and the evidence admitted at trial with the apparent aim of poking holes in the State's investigation and discrediting LaCount's version of events. While cross-examining Detective Smith, trial counsel extensively questioned the detective regarding inconsistencies between his report on his investigation and Larry's statement to police and subsequent trial testimony. And in closing,

counsel emphasized the fact that Larry's trial testimony had remained consistent over time and that the State was attempting to reconcile its theory of the case, as developed by LaCount, with Larry's testimony. Counsel even specifically noted that "[t]here is no inconsistency of any kind in the testimony of Mr. Larry. . . . [H]e was sure of what happened out there."

"A defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." (Citation and punctuation omitted.) *Sullivan v. State*, 301 Ga. 37, 40 (2) (a) (799 SE2d 163) (2017). Davis has not made such a showing here, and this claim fails.

(h) Davis next contends that his trial counsel was ineffective in failing to object to questions posed by the State to Detective Smith as leading. During cross-examination, Davis noted that, even though Larry told the detective that he saw Beamon and LaCount dancing at the club, LaCount testified that she did not remember whether she danced that night. On redirect examination, the State

asked Detective Smith a number of questions regarding this inconsistency and whether it had any bearing on other evidence adduced at trial. Davis now asserts that these questions were leading and that his trial counsel should have objected.[7] But Davis has not shown prejudice on this claim "because an objection likely would not have prevented the admission of the testimony, either because the trial court would have permitted the questions to be answered . . . [in order] to develop the witness's testimony . . . or because the prosecutor could have rephrased his questions." (Citation and punctuation omitted.) *Slaton v. State*, 303 Ga. 651, 656-657 (5) (814 SE2d 344) (2018). See also OCGA § 24-6-611 (c) (leading questions permitted on direct examination of witness "to develop the witness's testimony"). Thus, this claim fails.

(i) We turn now to Davis's final contentions, all of which concern his trial counsel's failure to object to certain portions of the State's closing argument. Specifically, Davis argues that his trial

---

[7] The record shows that trial counsel did, in fact, object to the questions as being cumulative and that the trial court responded by limiting the State's questioning to topics covered during Davis's cross-examination of Smith.

counsel should have objected to the State's (a) statements about how a "good prosecutor" performs his job; (b) "misstatements of evidence" regarding Davis's refusal to sign divorce paperwork and his flight to Peach County following Williams's death; and (c) statements that the jury should not concern itself with sentencing. Pretermitting whether trial counsel's failure to object on each of these grounds constituted deficient performance, Davis "has failed to show a reasonable likelihood that, absent the failure of his lawyer to object to [the prosecuting attorney's statements], the outcome of the trial would have been different." *Powell v. State*, 291 Ga. 743, 749 (2) (b) (733 SE2d 294) (2012). The trial court instructed the jury, both before closing arguments were made and in its charge to the jury, that closing arguments are not evidence, and the State presented substantial evidence of Davis's guilt. Moreover, Davis has not articulated to this Court how this series of stray comments made by the State in closing could have affected the jury's verdict.[8]

---

[8] We note that, in regard to all 13 claims of ineffective assistance he raises, Davis's appellate counsel has neglected to argue how his trial counsel's

23

Therefore, this claim also fails.

(j)  Finally, we consider the cumulative effect of prejudice resulting from counsel's deficient performance. *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2012) ("[I]t is the prejudice arising from 'counsel's errors' that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum."). As discussed above in Divisions 3 (a) through (g), Davis failed to show that his trial counsel's performance was deficient, and "failure to satisfy either prong is sufficient to defeat a claim of

---

performance prejudiced Davis.  Instead, he summarily declares that the claim of deficient performance at issue "can establish ineffective assistance of counsel," which he supports with a string cite, without comment or differentiation, to 14 cases decided by the Court of Appeals of Georgia.

It has not escaped this Court's notice that appellate counsel has used this same string cite, which fails to explain how the cited cases are relevant and applicable to the claim of ineffective assistance, in at least five briefs filed in this Court on behalf of different appellants and has used similar string cites in other briefs filed in this Court on behalf of still more appellants.  In all these instances, counsel makes no effort to argue prejudice on the facts of the specific case, relying solely upon the string cite. And despite this Court having noted counsel's failure to argue prejudice, see, e.g., *Harris*, 304 Ga. at 656 (2) (b) ("Harris, who has the burden to show prejudice, has provided no evidence supporting his claim that prejudice occurred, and his contention must fail."), counsel continues filing briefs with insufficient argument in this Court.  Claims of ineffective assistance of counsel are inherently fact- and case-specific, and counsel is admonished to argue them accordingly, consistent with the rules of this Court.

ineffective assistance." (Citation and punctuation omitted.) *Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019). And "[t]he cumulative prejudice from any assumed deficiencies discussed in Divisions [3 (h) and (i)] is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies." Id. We therefore find no merit in Davis's claims of ineffective assistance.

### Case No. S19A0416

4. Beamon argues that OCGA § 16-5-1 (c), Georgia's felony murder statute, is unconstitutionally vague, both facially and as applied to her case. For the reasons explained below, we reject Beamon's argument and affirm her convictions.

(a) We turn first to Beamon's claim that the felony murder statute is facially unconstitutional. In support of this claim, Beamon argues that this Court's decision in *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992), deprives persons of fair notice of the conduct proscribed by the statute and creates a potential for arbitrary enforcement. "A facial challenge is, of course, the most difficult

challenge to mount successfully because it requires one to establish that no set of circumstances exists under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep." (Citations and punctuation omitted.) *Bello v. State*, 300 Ga. 682, 685-686 (1) (797 SE2d 882) (2017). This Beamon has failed to demonstrate.

"It is well established that the void for vagueness doctrine of the due process clause requires that a challenged statute . . . give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated and provide sufficient specificity so as not to encourage arbitrary and discriminatory enforcement." (Citation and punctuation omitted.) *Major v. State*, 301 Ga. 147, 152 (2) (800 SE2d 348) (2017). OCGA § 16-5-1 (c) provides that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." In *Ford*, we held that "a felony," as used in the statute, "means any felony that is dangerous per se, or which by the attendant

26

circumstances, creates a foreseeable risk of death." (Citation and punctuation omitted.) *Ford*, 262 Ga. at 603 (1). Beamon argues that, because certain felonies cannot serve as predicate offenses for a felony murder charge, the statute is vague and fails to give fair notice.

But the language of the felony murder statute, read naturally, places all persons on notice that they commit the offense of murder by committing a felony that causes the death of another. The language of the statute could thus suggest to the reader that any felony can potentially serve as the predicate offense. But no defendant is prejudiced by the fact that, based on our holding in *Ford*, the felony murder statute does *not* apply to a given offense. Thus, no defendant could reasonably argue that the statutory text fails to provide a warning that a given felony could not serve as a predicate offense.[9]

---

[9] See *Smith v. State*, 290 Ga. 768, 778 (723 SE2d 915) (2012) (Nahmias, J., concurring) (explaining that *Ford* "cut back on the scope of the felony murder statute in several ways inconsistent with its text, history, and precedent"). We have not been asked to reconsider *Ford*'s holding in this case.

*Ford* instead provides a defendant with an avenue to argue that a specific felony offense cannot serve as a predicate to felony murder because such offense is "neither inherently dangerous nor life-threatening." *Ford*, 262 Ga. at 602 (1). Put differently, because the provisions of the statute require the State to prove that commission of the felony at issue caused the victim's death, persons of ordinary intelligence would understand that, at a minimum, any crime which involves conduct which is inherently dangerous or life-threatening could serve as a predicate offense. See *Crayton v. State*, 298 Ga. 792, 801-802 (784 SE2d 343) (2016) (Blackwell, J., concurring in part and dissenting in part) (to prove felony murder, State must demonstrate that defendant committed a felony "in circumstances that posed a foreseeable risk of death" and "thereby proximately caused" the victim's death). Thus, because the felony murder statute broadly places all persons on notice that felonious conduct leading to a death may result in a murder charge, persons of average intelligence are on adequate notice that such felonious conduct involving inherently dangerous or life-threatening conduct

28

is covered by the felony murder statute. Consequently, because many applications are valid, Beamon cannot demonstrate that the statute is facially unconstitutional.

(b) Beamon's argument that the felony murder statute is unconstitutional as applied to her case is likewise unavailing. "An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." (Citation and punctuation omitted.) *Bello*, 300 Ga. at 686. Beamon's argument on this point is limited to an evaluation of the subjective fairness of her sentence, particularly in comparison to the sentence LaCount received. In sum, she claims that because both she and LaCount engaged in virtually the same conduct — "riding in the back seat of the truck, with others who intended to rob [the victims], and who then ultimately assaulted and murdered the victim" — it is unfair that LaCount received a sentence of probation while Beamon was sentenced to life imprisonment. But fairness and considerations of prosecutorial discretion in charging co-conspirators who testify on behalf of the State are not considerations

29

in determining whether a statute is unconstitutional as applied.[10] Because Beamon has articulated no cogent argument as to how the felony murder statute is unconstitutional as applied, this argument fails.

*Judgments affirmed. All the Justices concur.*

---

[10] It is worth noting that the State extended the same plea deal it offered LaCount to Beamon during trial, a discussion of which Beamon's counsel put on the record. Pursuant to the State's offer, Beamon would have pleaded guilty to voluntary manslaughter, criminal attempt to commit armed robbery, aggravated assault of Larry, and conspiracy to commit armed robbery, with a potential maximum sentence of 50 years. The trial court explained to Beamon that it had the authority to probate or suspend either part or all of the sentence at its discretion, as it ultimately chose to do in LaCount's case. Beamon affirmed that she had been afforded sufficient time to consider the plea but would not accept it.

Decided June 10, 2019.

Murder. Chatham Superior Court. Before Judge Abbot.

Steven L. Sparger, for appellant (case no. S19A0164).

Barbara N. Lanier, for appellant (case no. S19A0416).

Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Jason M. Rea, Assistant Attorneys General, for appellee.