**THIRD DIVISION
DILLARD, C. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0613. McALLISTER, JR. v. THE STATE.

DILLARD, Chief Judge.

Following a trial by jury, David Billy McAllister, Jr. was convicted of rape, incest, and making a false statement to law enforcement, and then sentenced as a recidivist. McAllister appeals from his convictions, arguing that the trial court erred by (1) admitting evidence of a prior conviction for statutory rape; (2) denying his motion in limine as to the State's proposed cross-examination of an expert witness; (3) permitting the State to impeach him with prior convictions; (4) sustaining an untimely objection by the State to witness testimony; (5) failing to rebuke the State during closing argument; and (6) denying his motion for new trial when he received ineffective assistance of counsel in a number of instances. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that in December 2014, then six-year-old B. A. disclosed to a counselor at her after-school program that her father, McAllister, had "put his private on [her] private." Then, shortly after making this initial outcry, B. A. asked her mother about "yogurt stuff that comes out of daddy." Later, B. A.'s disclosure changed from McAllister placing his private *on* her private to placing it *in* her private, and was made to a social worker that she began to see for counseling. B. A. was subsequently questioned by a DFCS caseworker, and she again repeated that her father "put his private part in [her] . . . private parts, and it hurt." B. A. also told the caseworker that McAllister told her not to tell anyone what he had done. B. A. then testified along these same lines at trial—that her father "put his private in mine," it made her "sad," and it made her body hurt.

McAllister denied having sexual contact with his daughter when he was questioned by police, and he testified in this same manner at trial. The jury ultimately convicted him of the counts set forth *supra* , and he was charged as a recidivist due to two prior convictions for statutory rape and violating conditions of the sex-

---

[1] *See, e.g.*, *New v. State*, 327 Ga. App. 87, 88 (755 SE2d 568) (2014).

offender registration. This appeal follows the denial of McAllister's motion for new trial.

On appeal from a criminal conviction, we view the evidence in "the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent."[2] Thus, in evaluating the sufficiency of the evidence, we do not assess witness credibility or weigh the evidence, but only determine "if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt."[3] And the verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] With these guiding principles in mind, we turn now to McAllister's enumerations of error.

1. McAllister first contends that the trial court erred by admitting prior-acts evidence of a conviction for statutory rape, arguing that its probative value was substantially outweighed by its prejudicial effect. We disagree.

---

[2] *New*, 327 Ga. App. at 89 (punctuation omitted).

[3] *Id.* (punctuation omitted).

[4] *Id.* (punctuation omitted).

Here, the State provided pretrial notice that it intended to "introduce evidence of other crimes, wrongs or acts in the trial" under OCGA § 24-4-413, OCGA § 24-4-414, and OCGA § 24-4-404 (b). This notice, to which McAllister objected, included two separate acts by McAllister that resulted in an adjudication of juvenile delinquency and a criminal conviction for statutory rape.[5] On appeal, McAllister narrows his challenge to the admission of the prior conviction for statutory rape. At trial, the State ultimately did not introduce or discuss the juvenile disposition because it was unable to locate the witness to present evidence as to that prior act. But as to the statutory-rape conviction, McAllister maintains that the probative value of the evidence was substantially outweighed by the prejudicial effect.

During the pretrial hearing on the State's proposed prior-acts evidence, McAllister presented testimony by a licensed clinical social worker specializing in sexual deviancy, and who previously treated McAllister as part of a program from 2007 until 2011. This expert testified at length about what he considered McAllister's progress in that treatment program, the prior acts of McAllister that the State sought

---

[5] At the hearing on the motion, the State withdrew its notice to present several other instances of alleged sexual contact with minors.

4

to use at trial, and his conclusion that, upon completing treatment, he believed McAllister had a low risk of offending again as an adult.

On cross-examination, the expert agreed with the State that McAllister's act of statutory rape was "situational" in that it was perpetrated against a victim to whom he had access. Additionally, the expert testified that a 17-year-old engaging in consensual sex with a 14-year-old "isn't predatory" but "still indicate[s] that there's poor judgment and crossing boundaries and typically, you know, a desire." Thus, although such an offense is not technically considered predatory, the social worker testified that "we really don't look at an offense being consensual because technically an offense can't be consensual," and that there "has to be more power and an advantage of the abuser on the other person," which would "make it not be consensual just by definition." At the conclusion of the expert's testimony, the State presented nothing in rebuttal.

Ultimately, the trial court concluded that the State sought to admit the prior acts to show "lustful disposition, bent of mind, intent, and motive, and to corroborate the victim's testimony." The court initially concluded that the proposed evidence met the criteria for admission under OCGA § 24-4-413 or OCGA § 24-4-414. Thereafter, the court also concluded that, under OCGA § 24-4-403, the prejudicial effect did not

5

substantially outweigh its probative value and, in doing so, mentioned that McAllister could call his expert witness to testify at trial in order to "blunt the prejudicial effect of the evidence."

At trial, prior to the introduction of the testimony regarding the statutory rape, the trial court gave a limiting instruction to the jury as to its permissible use of the evidence.[6] The State then presented testimony from a 31-year-old woman who knew McAllister when she was 13 and he was 17. She testified that while the two of them were alone together in a mutual friend's bedroom, they engaged in sexual intercourse, which had been McAllister's idea. She further explained that she "didn't want to" and that "it wasn't something [she] was interested in," but that she "didn't exactly try to stop him." Her parents later discovered what occurred, and McAllister was subsequently charged with and convicted of statutory rape.

McAllister argues that the trial court erred in concluding that the probative value of this evidence was not substantially outweighed by its prejudicial effect. But he does *not* challenge the court's conclusion that this evidence was permissible under OCGA § 24-4-413 or OCGA § 24-4-414. And under our "new" Evidence Code,

[6] Later, the court gave a second instruction when the State made known that it would *not* be presenting evidence as to the other proposed prior act that had been argued at the pretrial hearing, *i.e.*, the juvenile disposition.

which is applicable in this case,[7] "[a] trial court's decision to admit other acts evidence will be overturned only [when] there is a clear abuse of discretion."[8]

OCGA § 24-4-413 provides as follows:

In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant.[9]

This Code Section goes on to provide that "offense of sexual assault," as used in the Code Section, "means any conduct or attempt or conspiracy to engage in" the following:

(1) Conduct that would be . . . [rape, sodomy or aggravated sodomy, statutory rape, sexual assault, incest, sexual battery, or aggravated sexual battery];[10]

---

[7] McAllister's trial was held after the effective date of Georgia's "new" Evidence Code. See Ga. L. 2011, p. 99, § 101 (new Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[8] *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015); *accord Steele v. State*, 337 Ga. App. 562, 565-66 (3) (788 SE2d 145) (2016).

[9] OCGA § 24-4-413 (a).

[10] *See* OCGA § 16-6-1; OCGA § 16-6-2; OCGA § 16-6-3; OCGA § 16-6-5.1; OCGA § 16-6-22; OCGA § 16-6-22.1; OCGA § 16-6-22.2.

(2) Any crime that involves contact, without consent, between any part of the accused's body or an object and the genitals or anus of another person;

(3) Any crime that involves contact, without consent, between the genitals or anus of the accused and any part of another person's body; or

(4) Any crime that involves deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person.[11]

Similarly, OCGA § 24-4-414 provides that "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant."[12] And this Code Section goes on to define "offense of child molestation," as used in the Code Section, to "mean[ ] any conduct or attempt or conspiracy to engage in" the following:

(1) Conduct that would be . . . [child molestation or aggravated child molestation, enticing a child for indecent purposes, sexual exploitation

---

[11] OCGA § 24-4-413 (d).

[12] OCGA § 24-4-414 (a).

8

of children, computer or electronic pornography and child exploitation, or obscene telephone contact with a child[13]];

(2) Any crime that involves contact between any part of the accused's body or an object and the genitals or anus of a child;

(3) Any crime that involves contact between the genitals or anus of the accused and any part of the body of a child; or

(4) Any crime that involves deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child.[14]

The language of both statutory provisions creates a "rule of inclusion," thus providing a strong presumption in favor of admissibility by explaining that such evidence "*shall* be admissible."[15] And in cases to which OCGA § 24-4-413 and OCGA § 24-4-414 are applicable, the provisions of these Code sections supersede the provisions of OCGA § 24-4-404 (b), which generally provides that

---

[13] *See* OCGA § 16-6-4; OCGA § 16-6-5; OCGA § 16-12-100; OCGA § 16-12-100.2; OCGA § 16-12-100.3.

[14] OCGA § 24-4-414 (d).

[15] *Steele*, 337 Ga. App. at 566 (3) (emphasis supplied); *see* OCGA § 24-4-413 (a); OCGA § 24-4-414 (a).

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Indeed, as we have previously explained, "[a]lthough lustful disposition is not one of the purposes specifically set out in OCGA § 24-4-404 (b) for the admission of other acts, OCGA § 24-4-413 provides an exception to the general rule in sexual assault cases and allows the admission of propensity evidence."[16] Likewise, we have concluded that "OCGA § 24-4-414(a) is the more specific statute regarding admission of prior acts of child molestation and is therefore controlling over OCGA § 24-4-404 (b)."[17]

As previously mentioned, McAllister challenges the admissibility of the statutory-rape evidence only to the extent that the trial court failed to rule that its probative value was substantially outweighed by its prejudicial effect. OCGA § 24-4-403 permits exclusion of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

---

[16] *Steele*, 337 Ga. App. at 566 (3) n.5.

[17] *Dority v. State*, 335 Ga. App. 83, 95 (3) (780 SE2d 129) (2015).

10

the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Importantly, the major function of OCGA § 24-4-403 is to "exclude matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect"[18] due to the danger that "the jury may convict the defendant not for the offense charged but for the extrinsic offense, because the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged."[19] But the decision as to whether to exclude such evidence under this provision "lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[20]

The Supreme Court of Georgia has recently reiterated the distinction between the related concepts of relevance and probative value as follows:

---

[18] *Brown v. State*, 303 Ga. 158, 162 (2) (810 SE2d 145) (2018) (punctuation omitted)

[19] *Id.* (punctuation omitted).

[20] *Benning v. State*, 344 Ga. App. 397, 402 (810 SE2d 310) (2018) (punctuation omitted); *accord Brown*, 303 Ga. at 161 (2); *Jones v. State*, 301 Ga. 544, 547 (1) (802 SE2d 234) (2017); *Parks v. State*, 300 Ga. 303, 306 (2) (794 SE2d 623) (2016); *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016).

11

Relevance is a binary concept—evidence is relevant or it is not—but probative value is relative. Evidence is relevant if it has "any tendency" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value.[21]

Further, our Supreme Court has explained that "the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the *strength of its logical connection to the fact for which it is offered*."[22] Additionally, probative value depends on "the marginal worth of the evidence—how much it adds . . . to the other proof available to establish the fact for which it is offered."[23] Put another way, "[t]he stronger the other proof, the less the marginal value of the evidence in question."[24] Furthermore, probative value also

---

[21] *Jones*, 301 Ga. at 546-47 (1) (emphasis omitted); *accord Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016).

[22] *Jones*, 301 Ga. at 547 (1) (punctuation omitted) (emphasis supplied); *accord Olds*, 299 Ga. at 75 (2).

[23] *Jones*, 301 Ga. at 547 (1) (punctuation omitted); *accord Olds*, 299 Ga. at 75-76 (2).

[24] *Jones*, 301 Ga. at 547 (1) (punctuation omitted); *accord Olds*, 299 Ga. at 76 (2).

depends upon the need for the evidence, such that "[w]hen the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence."[25]

When we review a trial court's decision under OCGA § 24-4-403, we examine whether the trial court "properly considered all the circumstances surrounding the extrinsic act evidence, including the similarities between the charged act and the extrinsic act, the remoteness in time between the charged act and the extrinsic act, and the prosecution's need for the extrinsic act evidence."[26] And in doing so, we must be mindful that the exclusion of relevant evidence under OCGA § 24-4-403 is an "extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence."[27] Thus, we look at the evidence in "the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."[28]

---

[25] *Jones*, 301 Ga. at 547 (1) (punctuation omitted); *accord Olds*, 299 Ga. at 76 (2).

[26] *Jones*, 301 Ga. at 548 (2).

[27] *Burgess v. State*, Case No. A18A1596, __ Ga. __, __ (3) (824 SE2d 99, 106 (3)) (Feb. 19, 2019) (punctuation omitted).

[28] *Id.* (punctuation omitted).

13

Here, the trial court considered each of the factors delineated above. And in doing so, the court acknowledged that the facts of the proposed "other acts" evidence were dissimilar to the relevant charges, which decreased the probative value of the evidence. The trial court also acknowledged that the temporal remoteness of the evidence—15 years for the statutory rape—likewise decreased its probative value. Finally, the trial court noted that the State argued the evidence was probative of McAllister's "intent and motive to sexually abuse children to whom he has access" and that he intended to attack the victim's credibility, which "heightened" the probative value of the evidence.

In considering the State's argument, the trial court noted that "[a]side from countering attacks on the victim's credibility, it is unclear from the record the extent to which the State 'needs' this other acts evidence." Nevertheless, the court ultimately concluded that both a limiting instruction and McAllister's potential to call his expert witness would "blunt the prejudicial effect of the evidence," and that the "probative value of the other acts evidence [was] not substantially outweighed by the risk of undue prejudice." We will now evaluate these considerations in turn, keeping in mind the relevant—and exceedingly deferential—standard of review.

14

(a) *The similarities.* As the trial court acknowledged, the facts of McAllister's statutory-rape conviction were dissimilar to the allegations he faced at trial. The statutory rape was committed by McAllister when he was 17 years old with a 13-year-old female with whom he was socializing at a home with mutual friends. But here, McAllister was indicted for raping his 6-year-old daughter in a hotel room when he was 32 and separated from the mother. Thus, while both incidents involved the act of sexual intercourse with a minor, one involved an underaged teenager and the other a pre-pubescent child; one involved McAllister as a 17-year-old and the other as a 32-year-old adult; and one involved an underaged acquaintance with whom McAllister was socializing and the other his own daughter. As a result, just as the trial court concluded, the probative value of the statutory-rape evidence was decreased somewhat by its dissimilarity to the charged offense.[29]

---

[29] *See State v. Dowdell*, 335 Ga. App. 773, 773-74, 779 (2) (2016) (physical precedent only) (holding that trial court properly concluded that prior acts and the charged offense were dissimilar when defendant was charged with the forcible rape of a 28-year-old woman, but had previously twice engaged in statutory rape of a 13-year-old as an 18-year-old, and touched another 13-year-old's vaginal area, breasts, and buttocks). *Cf. Benning v. State*, 344 Ga. App. 397, 402 (810 SE2d 310) (2018) (concluding, for purposes of Rule 413, that defendant's two prior sexual assaults were sufficiently similar in that they were incidents of forcible oral, vaginal, and anal rape in which acts were violently perpetrated against adult women; victims were at times in and out of sleep/consciousness; and victims were made to perform oral sex until vomiting and then forced to eat their own vomit, making the "manner of abuse"

(b) *The remoteness in time.* The trial court also correctly concluded that the remoteness in time between the two incidents—15 years between 1999 and 2014—decreased the probative value of the statutory rape evidence, in light of the dissimilarity between the prior conviction and the charges at issue in the trial.[30]

similar and the similarities making "the other offenses highly probative with regard to the defendant's intent in the charged offenses" (punctuation omitted)); *Blevins v. State*, 343 Ga. App. 539, 545 (2) (a) (808 SE2d 740) (2017) (holding that prior-acts evidence "added value through its similarity of the other proof available to establish the facts at issue"); *Dixon v. State*, 341 Ga. App. 255, 262 (1) (b) (800 SE2d 11) (2017) (concluding that acts were sufficiently similar when, notwithstanding that victims were different genders, "each involved inappropriate sexual contact between [defendant] and a child of similar age to whom [defendant] gained access through a relationship with the child's mother"); *Eubanks v. State*, 332 Ga. App. 568, 568-70 (1) (774 SE2d 146) (2015) (holding that prior acts and charged offense were similar when both involved minor girls of overlapping age and allegations that defendant digitally penetrated minor's vagina); *cf. also United State v. Brimm*, 608 Fed.Appx. 795, 796-97 (A), 799-800 (D) (11th Cir. 2015) (holding that evidence of defendant's prior conviction for child molestation was "highly similar" to details given by victims of current accusations when defendant used the same *modus operandi* in both by "preying on vulnerable young boys with offers of shelter, food and money so that he could perform oral sex on them" and when details of the prior act were "nearly identical" to the current accusations in that defendant performed oral sex on 11-, 12-, and 17-year-old boys until ejaculation, which he swallowed and said tasted good; defendant also asked 17-year-old to remove body hair to "appear[ ] younger" and told 17-year-old that he "preferred boys under the age of 15," believed sex with children should not be illegal, collected child pornography, and expressed desire to perform sex acts upon two specific 12-year-old boys).

[30] *See United States v. Cardenas*, 895 F2d 1338, 1344 (II) (A) (11th Cir. 1990) ("[T]he more time separating the charged and prior offense, the less probative value can be assigned the extrinsic evidence."). *Cf. Dixon*, 341 Ga. App. at 262 (1) (b)

(c) *The State's need.* As previously noted, the trial court acknowledged the State's argument that the statutory-rape evidence was probative of McAllister's "intent and motive to sexually abuse children to whom he has access" and that he intended to attack the victim's credibility. And in the court's view, the planned attack on the victim's credibility "heightened" the probative value of the evidence. But the court went on to note that, "[a]side from countering attacks on the victim's credibility, it is unclear from the record the extent to which the State 'needs' this other acts evidence."

---

(holding that "[t]he passing of 7-13 years between [defendant's] molestation of [prior victim] and the victim in this case does not mandate the conclusion that the trial court abused its discretion in its application of the [Rule 403] balancing tests, *particularly* [when the defendant's] access to the children was based upon a relationship with their mother" (emphasis supplied)); *Eubanks*, 332 Ga. App. at 570 (1) (holding that passage of 17 years between prior acts and current charges, "[a]lthough somewhat remote in time, . . . did not require exclusion because of the *similarity* of the events and the resulting probative value of the challenged evidence" (emphasis supplied)); *cf. also Kirby v. State*, 304 Ga. 472, 479 (4) (a) (i) (819 SE2d 468) (2018) (holding that temporal remoteness of more than 11 years was "not so remote as to be lacking in evidentiary value" in trial on charges for which prior acts had "significant similarities" (punctuation omitted)); *Burgess*, __ Ga. App. at __ (3) (824 SE2d at 107 (3)) (holding that span of approximately 12 years "was not too remote to erode the probative value of the prior conviction" that was identical to the charges at issue); *Gunn v. State*, 342 Ga. App. 615, 621-22 (1) (804 SE2d 118) (2017) (holding that span of 11 years "was not too remote to erode the probative value of the prior conviction" for possession of cocaine with intent to distribute in trial on charges of trafficking cocaine and possessing it with intent to distribute).

17

It is true, of course, that when the defendant seeks to attack a victim's credibility, the State has an increased need to introduce evidence of prior acts.[31] Thus, the trial court was correct to weigh the defendant's stated intent to attack the victim's credibility in favor of admitting the statutory-rape evidence.

(d) *The ultimate conclusion*. Despite the diminished probative value of the statutory-rape evidence,[32] we cannot conclude that the trial court abused its discretion in admitting this evidence in light of the State's need for the evidence (*i.e.*, as a result of the defendant's stated intent to attack the credibility of the victim, his own

---

[31] *See Robinson v. State*, 342 Ga. App. 624, 636 (4) (b) (805 SE2d 103) (2017) (physical precedent only as to Div. 4 (b)) (holding that trial court acted within its discretion by admitting evidence of prior sexual acts of exposing self to minors and attempted sexual assault that occurred four years and one year prior, respectively, to incident giving rise to charges of rape and child molestation, "[p]articularly in light of . . . attacks on the victim's credibility"); *Dixon*, 341 Ga. App. at 262 (1) (b) (holding that "State's need for the evidence was great based upon [defendant's] attacks on the victim's credibility"); *Eubanks*, 332 Ga. App. at 570 (1) ("[I]n the face of [defendant's] attacks on the victim's credibility, the State was able to use the evidence to show that [defendant] had a motive of seeking nonconsensual sexual contact with a minor, which was important in this case because the victim only complained of a single, isolated incident.").

[32] We also cannot conclude that the evidence was without probative value in light of McAllister's *own expert's* testimony to the trial court that the act of statutory rape "still indicate[s] that there's poor judgment and crossing boundaries and typically . . . desire," and that there "has to be more power and an advantage of the abuser on the other person," which would "make it not be consensual just by definition."

18

daughter), the limiting instructions given to the jury by the court, and the strong

statutory presumption in favor of admissibility.[33] Moreover, the dissimilarity between

the statutory rape and the charges at issue arguably lessened the likelihood that the

jury would be incited to make an irrational decision.[34] Likewise, the jury knew that

McAllister had been convicted of and punished for his commission of the statutory

---

[33] *See Robinson*, 342 Ga. App. at 636 (4) (b) (physical precedent only as to Div. 4 (b)) ("Particularly in light of [defendant's] attacks on the victim's credibility, the strong presumption in favor of the admission of evidence under Rules 413 and 414, and the trial court's limiting instructions to the jury, the trial court acted within its discretion in permitting the State to introduce evidence of [defendant's] prior acts of child molestation and sexual assault."); *Dixon*, 341 Ga. App. at 262 (1) (b) ("[T]he trial court's limiting instruction to the jury in this case mitigated the risk of undue prejudice."); *Eubanks*, 332 Ga. App. at 570 (1) ("[I]n the face of [defendant's] attacks on the victim's credibility, the State was able to use the evidence to show that [defendant] had a motive of seeking nonconsensual sexual contact with a minor, which was important in this case because the victim only complained of a single, isolated incident.").

[34] *See Blevins*, 343 Ga. App. at 545 (2) (a) ("[T]hese extrinsic acts were not of such a heinous nature that they were likely to incite the jury to an irrational decision." (punctuation omitted)); *Cf. Gerbert v. State*, 339 Ga. App. 164, 178 (3) (b) (793 SE2d 131) (2016) ("It is unlikely that the jury would be more inflamed in any appreciable measure by the relatively minor other acts evidence than the jury already was by the heinous sexual offenses against children with which he was actually charged. The impact of the other acts evidence was thus relatively minimal.").

19

rape, "making it less likely that the jury would want to punish [him] for this past conduct rather than the charged crimes."[35]

For all these reasons, McAllister has not established that the trial court abused its discretion by admitting evidence of the past statutory rape.

2. Next, McAllister argues that the trial court erred by denying his motion in limine as to the State's anticipated cross-examination of his proposed expert witness. Again, we disagree.

After the trial court concluded that it would permit the admission of the prior act discussed in Division 1, *supra*, McAllister filed a motion in limine in anticipation of calling his expert witness to—as the trial court suggested in its order—"blunt the prejudicial effect of the evidence." This motion sought to limit the State's cross-examination of the expert witness as to the "additional prior acts which the State does not intend to introduce at trial," which the State had been permitted to inquire about over objection on cross-examination at the prior hearing. McAllister asserted that

---

[35] *Kirby*, 304 Ga. at 480 (4) (a) (i); *see United State v. Beechum*, 582 F2d 898, 914 (III) (C) (5th Cir. 1978) ("One of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense. This danger is particularly great where, as here, the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." (citation omitted)).

because these other prior acts were "impermissible character evidence," they should be excluded. When the trial court denied McAllister's motion, he elected to *not* call the expert to testify at trial.

Because McAllister did not call the expert to testify at trial, he waived this alleged error.[36] Indeed, without the benefit of the witness's testimony, our review would be entirely speculative when (1) we do not know what the trial testimony would have been; (2) the trial court might have altered its initial ruling as the case unfolded; (3) the State might not have cross-examined the expert as planned; and (4) even without these other difficulties, we would be unable to conduct "harmless error"

---

[36] *Cf. McKoy v. State*, 303 Ga. 327, 331-34 (2) (812 SE2d 293) (2018) (holding that defendant waived review of trial court's ruling in limine that his journals were admissible for impeachment purposes when journals were never actually admitted into evidence due to his refusal to testify on cross-examination); *Warbington v. State*, 316 Ga. App. 614, 618-19 (730 SE2d 90) (2012) ("The record . . . is not amenable to meaningful appellate review. Because [defendant] declined to testify, we will not speculate on the substantive merits of his contention that the trial court's pretrial ruling was prejudicial error." (footnotes omitted)); *Luce v. United States*, 469 U.S. 38, 41-43 (III) (105 SCt 460, 83 LE2d 443) (1984) (holding that because defendant did not testify after trial court denied his motion in limine, court would not review argument that motion had been erroneously denied); *United States v. David*, 803 F2d 1567, 1568 (11th Cir. 1986) (holding that defendant waived review of ruling denying motion in limine to restrict Government's right to impeach with prior conviction when defendant did not testify); *United State v. DiPaolo*, 804 F2d 225, 233 (C) (2nd Cir. 1986) (holding that claim that court erred in denying motion in limine was not subject to appellate review when alibi witness did not take the stand).

21

review because we cannot discern the impact any allegedly erroneously admitted evidence would have had.[37] As our Supreme Court has recognized, "[h]aving a full factual context is essential to meaningful appellate review of the trial court's evidentiary ruling."[38] Thus, in the absence of testimony from McAllister's expert, this enumeration presents nothing for us to review.[39]

3. McAllister also argues that the trial court erred by permitting the State to impeach his testimony, under OCGA § 24-6-609, with a *second* statutory rape, a burglary conviction, and a conviction for violations of the requirements of the sex-offender registry.[40] Yet again, we disagree.

OCGA § 24-6-609 provides that a defendant who testifies may be impeached with prior convictions for crimes "punishable by death or imprisonment in excess of one year under the law under which the witness was convicted," but only after the

---

[37] *Cf. Warbington*, 316 Ga. App. at 616, 619 (discussing the Supreme Court of the United States's analysis in *Luce v. United States*, 469 U.S. 38 (105 SCt 460, 83 LE2d 443) (1984), and thereafter adopting that rationale).

[38] *McKoy*, 303 Ga. at 333 (2).

[39] McAllister does not separately enumerate the failure to call the expert as one of his alleged instances of ineffective assistance of counsel.

[40] The State had not sought to use this second statutory-rape conviction under Rules 413 or 414.

trial court determines that "the probative value of admitting the evidence outweighs its prejudicial effect to the accused."[41] This Code Section further provides that convictions older than ten years are inadmissible unless the trial court determines, "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."[42]

Here, the record shows that prior to McAllister's testimony, the trial court conducted a hearing outside the presence of the jury to consider the State's request to present the convictions for statutory rape, burglary conviction, and violation of the sex-offender registration requirements. The statutory-rape and burglary convictions were part of the same case that resulted in McAllister's previously discussed conviction for statutory rape, although it concerned a different victim, and the burglary charge was based upon entering a home in order to commit statutory rape. This conviction was, once again, based upon an incident that took place in 1999, and McAllister entered a plea of guilty to the charges in 2000. The trial court concluded that because of the dissimilarity between the statutory rape and the current charges,

---

[41] OCGA § 24-6-609 (a) (1).

[42] OCGA § 24-6-609 (b).

and because the credibility of the victim and McAllister were central to the case, it would permit the use of this conviction for purposes of impeachment.

As for the conviction for violation of the sex-offender registry, arguments showed that it was based on McAllister's failure to timely register a change in employment. This conviction, too, was more than ten years old. The State argued that the prejudicial effect of this evidence was low because McAllister had already informed the jury during opening statements that he was a registered sex offender, and that it was relevant to credibility because McAllister knew he was required to inform the sheriff's department of that information. Again, the trial court determined that this conviction would be admissible for purposes of impeachment.

The trial court concluded that only the convictions themselves would be a source for cross-examination. Thereafter, during direct examination, trial counsel asked McAllister about the statutory-rape conviction that had been admitted into evidence earlier in the trial. She followed that with asking McAllister if he had ever had sexual intercourse with anyone else under the age of 16, to which McAllister replied "yes" and provided the name of the victim in the second statutory-rape conviction that the State sought to admit under OCGA § 24-6-609. Then, during McAllister's cross-examination, he was not asked about the prior convictions the

24

court had ruled admissible under OCGA § 24-6-609. Nevertheless, the State tendered certified copies of the convictions into evidence after he left the stand.

And because the State never questioned McAllister about the prior convictions, he is left to complain only about the admission of the certified copies of the convictions. Specifically, McAllister argues that the trial court erred by permitting the State to introduce the prior convictions "over objection." But the record shows that McAllister affirmatively stated he had "no objection" to their admission. Indeed, the State showed McAllister both exhibits when they were tendered into evidence, and when the trial court explicitly asked if there were "any objections," two times—as to each separate exhibit—McAllister responded that he had "no objection." Thus, McAllister affirmatively waived any earlier objection to this evidence by responding that he had "no objection" when the certified copies of the convictions were tendered into evidence.[43] As a result, plain error does not even apply to these circumstances[44]

---

[43] *See Adams v. State*, Case No. S18G0699, 2019 WL 2332129, at *2 (Ga. June 3, 2019) (holding that, by stating that he had no objection, appellant "affirmatively waived any claim of error from the admission of the [evidence], so there was no plain error"); *Adkins v. State*, 301 Ga. 153, 156 (2) (800 SE2d 341) (2017) ("Although we may take notice of plain errors affecting substantial rights even when an error is not brought to the attention of the trial court, OCGA § 24-1-103 (d), "[W]here invited error exists, it precludes a court from invoking the plain error rule and reversing." (punctuation omitted)); *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015) ("An appellate court may reverse a trial court for plain error if the . . . error

25

and this enumeration presents nothing for us to review.[45] Furthermore, in light of the fact that McAllister *himself* mentioned his registration as a sex offender and that he engaged in sexual intercourse with a second minor, it is unlikely that tendering

---

was not affirmatively waived by the defendant[.]" (punctuation omitted)); *Lee v. State*, 347 Ga. App. 508, 512 (2) (820 SE2d 147) (2018) (cited with approval by *Adams v. State*, Case No. S18G0699 (Ga. June 3, 2019), and holding that appellant's affirmative statement that he had no objection to jury charge waived plain-error review of claim that trial court improperly referenced stipulation). *But see Crayton v. State*, 298 Ga. 792, 799 (5) (784 SE2d 343) (2016) ("Counsel for appellant asserted on the record that he had no objection to the admission of the documentary evidence. Inasmuch as appellant did not object to the admission of this evidence and affirmatively stated he had no objection to the admission of the evidence in question, our review is for plain error under Georgia's new Evidence Code.").

[44] *See United States v. Phillips*, 834 F3d 1176, 1183 (III) (B) (11th Cir. 2016) ("When a defendant forfeits an argument in the district court, we can review it for plain error. But when a defendant waives an argument in the district court, we cannot review it at all because no error occurred in the first place. The defendant's waiver is a form of consent that lifts a limitation on government action by satisfying its terms—that is, the right is exercised and honored, not disregarded." (citations & punctuation omitted)); *Cheddersingh v. State*, 290 Ga. 680, 682-84 (2) (724 SE2d 366) (2012) (cited with approval by *Adkins v. State*, 301 Ga. 153 (2017), and explaining that "waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right" (punctuation omitted)).

[45] Once again, McAllister does not separately enumerate this as an instance of ineffective assistance of counsel.

certified copies of the convictions related to those instances affected the outcome of the trial court proceedings.[46]

4. McAllister contends that the trial court erred by improperly sustaining the State's objection that testimony from the victim's therapist was inadmissible hearsay. And because McAllister has failed to establish that the trial court plainly erred, we disagree.

The testimony at issue is as follows:

[Counsel:] Now, in June of 2015[,] to your knowledge was [B. A.] being sexually abused?

[Therapist:] In June?

[Counsel:] Yes.

[Therapist:] No.

[Counsel:] But in June, on June 29th of 2015, [B. A.'s] mom disclosed that [B. A.] had been acting out sexually with a cousin.

---

[46] *See, e.g., Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016) ("[B]eyond showing a clear or obvious error, plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (punctuation omitted)).

[Therapist:] Correct.

[Counsel:] They'd been touching each other's private parts?

[Therapist:] Correct.

[Counsel:] [B. A.] told you —

At this point, the State objected on the basis that the statements made to the therapist by B. A.'s mother had not been addressed during her testimony and, thus, were inadmissible hearsay.

In his motion for new trial, and again on appeal, McAllister argues that the foregoing testimony was admissible to explain the objective effect it had upon the therapist.[47] This contention is a nonstarter.

To begin with, when the court sustained the State's objection, McAllister's counsel responded that she would "move on" without otherwise arguing as to the admissibility of the testimony. In doing so, McAllister arguably waived plain-error

---

[47] *See Graham v. State*, 331 Ga. App. 36, 39 (2) (769 SE2d 753) (2015) (holding that testimony concerning an out-of-court statement was offered to explain its effect on those who heard the statement and their subsequent conduct, and was, therefore, admissible as nonhearsay); *see also United States v. Hanson*, 994 F2d 403, 406 (II) (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.").

review of this enumeration by acquiescing to the trial court's ruling on the State's objection.[48]

But even if McAllister's decision to "move on"—rather than argue in response to the State's objection—did not waive plain-error review, he still does not satisfy that standard. Indeed, when conducting a review for plain error under OCGA § 24-1-103[49] the following analysis is required:

> [f]irst, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the

---

[48] *See Stroud v. State*, 301 Ga. 807, 810 (II) (804 SE2d 418) (2017) (holding that appellant could not challenge the admission of evidence to which he had acquiesced, and relying upon *Adkins v. State*, 301 Ga. 153 (2017), in doing so); *Adkins*, 301 Ga. at 156-57 (2) (holding that, on plain-error review, defendant could not complain about error that he induced); *see also Collier v. State*, 288 Ga. 756, 764 (2) (a) n.4 (707 SE2d 102) (2011) (Nahmias, J., concurring specially) (holding that, even with plain-error review, "other waiver doctrines may still apply to limit or preclude appellate review, such as *invited error* or the failure to enumerate the jury charge as error in the appellant's brief or to support the enumerated error by argument and citation to authority" (emphasis added)) Again, McAllister does not separately enumerate this as an instance of ineffective assistance of counsel.

[49] OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[50]

Here, McAllister argues that he should have been permitted to question the therapist about the out-of-court statements of B. A.'s mother because they were "admissible for the objective effect they would have on [the therapist]" and the therapist "would certainly need to hear about concerns, particularly from [B. A.'s] mother, about [B. A.'s] conduct." But he fails to explain what effect those statements arguably had on the therapist, why he needed to establish the effect they had on the therapist, or *how* his preclusion from establishing their effect on the therapist affected the outcome of his trial. Indeed, in the very next paragraph of his brief, McAllister instead suggests that the jury should have been permitted to consider B. A.'s mother's

---

[50] *Gates*, 298 Ga. at 327 (3) (punctuation omitted); *accord State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); *see also Tyner v. State*, 305 Ga. 326, 331 (4) (825 SE2d 129) (2019) ("To show plain error, [appellant] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.").

statements to the therapist for the truth of the matter asserted, notwithstanding the

lack of a separate, articulated hearsay exception:

> [T]he type of conduct by [B. A.] that was reported on June 15 and 29,
> 2015, is the very same type of conduct that the State argued was due to
> [B. A.] having been molested by McAllister. But, [B. A.] was not being
> sexually abused at that time, particularly not by McAllister as he was
> incarcerated. The State did not want the jury to be allowed to consider
> evidence that would contradict its explanation that [B. A.'s] behavior
> was the result of having been molested by McAllister.

Accordingly, because McAllister has failed to fully articulate an argument as

to how or why the relevant testimony was admissible, he has failed to establish the

first two prongs of the plain-error test—(1) that there was an error, and (2) that the

error was clear and not subject to reasonable dispute.[51]

5. Next, McAllister asserts that the trial court erred in failing to rebuke the

State during closing argument when it referred to statutory rape as "rape." Again, we

disagree.

---

[51] *See Tyner*, 305 Ga. at 331 (4) (825 SE2d 129) (2019) ("To show plain error,
[appellant] must point to an error that was not affirmatively waived, the error must
have been clear and not open to reasonable dispute, the error must have affected his
substantial rights, and the error must have seriously affected the fairness, integrity or
public reputation of judicial proceedings.").

The record shows that two times during the course of closing arguments, while referring to the two statutory-rape convictions that were in evidence, the State characterized those offenses as "rape" in addition to referring to them, most of the time, as "statutory rape." Upon McAllister's first objection, which was specifically in reference to the State going into detail about the second statutory-rape conviction that had been admitted under OCGA § 24-6-609, the trial court overruled the objection but also instructed the jury that "what the lawyers say in closing argument is not evidence" and that the jurors should "recall the evidence for yourself and make the decision you think is appropriate." When the State then proceeded to again refer to statutory rape as "rape," McAllister's second objection was shut down by the trial court as follows: "Unless you raise some objection about some arguments regarding prejudicial matters not in evidence—will you just listen to me? . . . That's a proper objection. Anything else I'm not going to hear. I'm not going to tolerate it."

McAllister is correct that rape and statutory rape are "separate offenses, requiring proof of different elements."[52] But setting aside whether the trial court erred in failing to rebuke the State's prosecutor, any error was harmless. In light of the State

---

[52] *Brown v. State*, 319 Ga. App. 680, 683 (2) (738 SE2d 132) (2013); *accord Stuart v. State*, 318 Ga. App. 839, 841 (734 SE2d 814) (2012).

32

correctly referring to the prior incidents as "statutory rape" the vast majority of the time, as well as the trial court's instruction that attorney statements during closing arguments were not evidence, "it is highly probable that neither this statement by the prosecutor in closing argument, nor any alleged failure of the trial court to comply with OCGA § 17-8-75,[53] contributed to the verdict."[54]

6. Finally, McAllister argues that the trial court erred in denying his motion for new trial when counsel rendered ineffective assistance in a number of instances. Once again, we disagree.

---

[53] OCGA § 17-8-75 provides that when

counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

[54] *Ware v. State*, 302 Ga. 792, 794 (2) (809 SE2d 762) (2018) (punctuation omitted); *see also Williams v. State*, 297 Ga. 460, 463-64 (2) (773 SE2d 213) (2015) (holding that trial court's instruction to the jury that it would provide instructions as to the applicable law rendered State's misstatement of the law harmless).

In order to establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant.[55] And should a defendant fail to meet his burden on one prong of this two-prong test, we need not review the other prong.[56] Moreover, there is a "strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy."[57] With these guiding principles in mind, we now turn to McAllister's specific contentions.

(a) McAllister contends that his counsel was ineffective by failing to object to the State's argument during closing that it does not have a client, represents the people, and pursues justice. He contends that this argument injected extrinsic prejudicial evidence into the case. Specifically, the State's prosecutor argued as follows:

---

[55] *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *see, e.g.*, *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[56] *Gomez*, 300 Ga. at 573; *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

[57] *Anderson v. State*, 335 Ga. App. 78, 81 (3) (778 SE2d 826) (2015) (punctuation omitted); *accord Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

Prosecutors that represent the State of Georgia [are] different. Our responsibility is not just to insure that when the laws are broken people are held accountable. We represent the people, but we have a higher calling. We don't have a client. And in fact we are held to standards where we are pursuing justice. That's the pursuit. That's the goal. We don't have an actual client.

McAllister maintains that this argument by the State referred to extraneous, prejudicial evidence that was not before the jury, as there was no evidence "about any oaths the prosecutor may have taken, nor was there any evidence about the duties of a prosecutor." Thus, he asserts that his counsel should have objected or moved for a mistrial.

As we have previously explained, a prosecutor is "granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion, to argue reasonable inferences from the evidence."[58] It is true that there were no facts in evidence to support the State's argument and, as is obvious, it did not even relate to the charges at issue. But more than arguing facts not in evidence, the comments by the State's prosecutor during closing seem more akin to an "argument that

---

[58] *Faust v. State*, 302 Ga. 211, 219-20 (4) (c) (805 SE2d 826) (2017) (punctuation omitted).

35

unnecessarily impugns the integrity of opposing counsel, even if obliquely,"[59] which our Supreme Court has concluded are "distasteful."[60] Nevertheless, even if counsel should have objected to the foregoing comments during closing argument, there is no reasonable probability that they affected the jury's decision because they did not actually refer to anything relevant to the case before the jury.[61] Accordingly, McAllister has failed to establish that he was prejudiced by the lack of an objection.

(b) McAllister next argues that trial counsel was ineffective by failing to object to the State's closing argument that only two people were in the room during the sexual assault—McAllister and the victim. Specifically, he contends that this argument was not based upon the evidence introduced at trial because, in the victim's various statements about the incident, she at one point indicated that a second man participated in the crimes and that a second minor female was also present.

---

[59] *Brockman v. State*, 292 Ga. 707, 727 (14) (a) (739 SE2d 332) (2013) (punctuation omitted); *accord Gissendaner v. State*, 272 Ga. 704, 713 (10) (a) (532 SE2d 677) (2000).

[60] *Brockman*, 292 Ga. at 727 (14) (a); *Gissendaner*, 272 Ga. at 713 (10) (a).

[61] *Cf. Brockman*, 292 Ga. at 727 (14) (a) ("Nevertheless, we conclude that there is no reasonable probability that the prosecutor's allegedly improper arguments changed the jury's exercise of discretion in choosing between life imprisonment or death, as the trial court charged the jury that evidence does not include the attorneys' closing arguments." (citation omitted)).

36

The evidence shows that the victim told her counselor that the molestation by this other man occurred at her house, whereas the allegations as to McAllister occurred in a hotel room. As to the presence of another child, the victim made another allegation to the therapist that she witnessed a girl being molested at the house of the other man, who she described as being a friend of McAllister's. Given this evidence, the State was permitted to reasonably argue the inference that, during the incident for which McAllister was on trial, only two people were in the room—McAllister and the victim.[62] And the failure to make a meritless objection cannot sustain a claim of ineffective assistance of counsel.[63]

(c) McAllister also takes issue with trial counsel's failure to object when the State argued that his conviction for violations of the sex-offender registry was deceitful, dishonest, and untruthful. But aside from citation to authority for the basic legal principles on the failure to object or move for a mistrial being possible instances of ineffective assistance of counsel, McAllister does not otherwise support his contentions in this enumerated error. And as we have previously explained, "an

---

[62] *See Faust*, 302 Ga. at 219-20 (4) (c) ("[A] prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion, to argue reasonable inferences from the evidence.").

[63] *Harris v. State*, 304 Ga. 652, 658 (2) (c) (821 SE2d 346) (2018).

appellant must support enumerations of error with argument and citation of authority,"[64] and "mere conclusory statements are not the type of meaningful argument contemplated by our rules."[65] Accordingly, he has abandoned this assertion for appellate review.[66]

(d) Finally, McAllister argues that trial counsel was ineffective by failing to object to the State's argument that, based upon any one of his prior convictions, the jury could completely disregard his testimony. We disagree that this presents reversible error.

---

[64] *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014); *see* Court of Appeals Rule 25 (a) (3) (providing that part three of appellant's brief "shall contain the argument and citation of authorities" and "a concise statement of the applicable standard of review with supporting authority for each issue presented in the brief"); *see also* Court of Appeals Rule 25 (c) (2) (providing that "[a]ny enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned").

[65] *Brittain*, 329 Ga. App. at 704 (4) (a) (punctuation omitted); *accord Davenport v. State*, 308 Ga. App. 140, 156 (2) (e) (706 SE2d 757) (2011); *Towry v. State*, 304 Ga. App. 139, 148 (2) (g) n.7 (695 SE2d 683) (2010).

[66] *See Brittain*, 329 Ga. App. at 704 (4) (a) (deeming arguments abandoned by failure to provide citation to authority or meaningful argument as contemplated by Court Rules).

McAllister takes issue with the State's closing argument comments to the jury as follows:

> Five separate felony offenses. All it takes is one for you to basically say—and the Judge will tell you this. Again, this is your decision. But you literally can say because he has a felony conviction, you completely disregard everything he has to say. It's not credible. That's what the law is. And he doesn't have one felony, ladies and gentlemen. He has five.

Then, a few minutes later, the State commented again that "for any one of these felonies of the five out there, you can completely disregard his testimony." Later, during the trial court's charge to the jury, it instructed that the jurors had "received in evidence prior convictions of the defendant. You may consider this evidence only in so far as it may relate to attacking the credibility of the defendant and not for any other purpose."

McAllister essentially argues that his trial counsel was ineffective in failing to object or move for a mistrial as to the prosecutor's statements because they misstated the law. But just as McAllister notes on appeal, "[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with

the trier of fact."[67] And logically, it flows from this that the jury *could*, though was not required, to find McAllister's testimony wholly without credibility and afford it no weight, *i.e.*, to "disregard" his testimony in light of his prior felony convictions. Once again, the failure to make a meritless objection cannot sustain a claim of ineffective assistance of counsel.[68]

For all these reasons, we affirm McAllister's convictions.[69]

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

[67] *State v. Starks*, 281 Ga. App. 15, 16 (635 SE2d 327) (2006) (punctuation omitted); *accord Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994).

[68] *Harris*, 304 Ga. at 658 (2) (c).

[69] Although we affirm McAllister's convictions, we pause to express our disappointment with the State's appellate brief, which was cursory and often failed to provide meaningful arguments and citations to authority. We advise the State to engage in more than the bare minimum amount of effort in future filings with this Court. *See* Court of Appeals Rule 23 (b) ("A brief shall be filed by the State when it is the appellee in the appeal of a criminal case, and the State's representative may be subject to sanctions, including contempt, for failing to file a responsive brief.").