318 Ga. 690
FINAL COPY

S24A0179. RICHARDSON v. THE STATE.

LaGrua, Justice.

Appellant Matthew Richardson appeals his convictions for felony murder and other crimes related to the shooting death of Julius Aderhold III.[1] Richardson contends that (1) the trial court committed plain error when it admitted testimony of a detective that improperly bolstered out-of-court statements by two other witnesses; and (2) his trial counsel provided constitutionally

[1] The crimes occurred in Atlanta on January 30, 2018. On May 1, 2018, a Fulton County grand jury indicted Richardson for felony murder predicated on aggravated assault with a deadly weapon (Count 1), two counts of aggravated assault with a deadly weapon upon Jabari Johnson and Arieon Young (Counts 2 and 3), terroristic threats (Count 4), and possession of a firearm during the commission of a felony (Count 5). Richardson was tried in November 2019, and the jury found him guilty of all counts. The trial court sentenced Richardson to serve life in prison with the possibility of parole on Count 1, a consecutive five-year term in prison on Count 5, and 20 years in prison to run concurrent on Counts 2, 3, and 4. Richardson filed a timely motion for new trial, which was amended through new counsel. After holding an evidentiary hearing, the trial court denied the motion for new trial on June 6, 2023. Richardson filed a timely notice of appeal, and his case was docketed to this Court's term beginning in December 2023 and submitted for a decision on the briefs.

ineffective assistance by failing to object to that same testimony.[2] For the reasons explained below, we affirm.

1. This case involves a drive-by shooting on January 30, 2018, during which Richardson's friend and passenger Aderhold was shot and killed. The evidence presented at trial showed that Richardson was upset with Jabari Johnson for his alleged involvement in stealing a gun belonging to Richardson's cousin. Johnson testified that, on January 29, Richardson called Johnson's girlfriend and asked about the stolen gun. The next day, January 30, Richardson visited Johnson's house. Discovering that only Johnson's two sisters were home, Richardson called Johnson on the phone while standing by the front door. Johnson and his two sisters testified that Richardson threatened Johnson during the call, telling him,

---

[2] Richardson also challenges the sufficiency of the evidence supporting his conviction for terroristic threats. However, although he lists that claim as one of his enumerated errors, he presents no legal argument or citation of authority in support. Thus, this contention is deemed abandoned. See former Supreme Court Rule 22 (2023) ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned. . . ."). See also *Smith v. State*, 315 Ga. 357, 358 (1) n.2 (882 SE2d 289) (2022) (deeming abandoned under former Rule 22 an unsupported claim of error pertaining to the sufficiency of the evidence).

"Somebody about to die about this gun today. . . . I could kill your sister right now." All three also testified that Richardson said he was going to go to the house of Johnson's friend Arieon Young to "shoot it up." After ten minutes of arguing with Johnson over the phone, Richardson left Johnson's house.

At another point that afternoon at Young's house, the mother of Young's child was upstairs and saw a man standing outside the front door holding a gun. She did not answer the door, but she called Young and said a man was there with a gun. The man left by the end of this phone call. Young later told investigators that this man was Richardson based on what his child's mother told him, but at trial, both Young and his child's mother testified that they did not know if the man was Richardson.

During these phone calls to Young and Johnson, Young was driving Johnson and their friend Marquise Arnold to pick up Arnold's paycheck. In response to Richardson's threats against Johnson and Young, Young called Richardson to see what the problem was. After that phone call, Young changed course and drove

3

home. Young's mother, his young child, and his child's mother were present at the house. After Young, Johnson, and Arnold arrived, Young's family and Arnold went upstairs because Young told them Richardson was coming with a gun. Johnson went to the kitchen, and Young stood in front of the house talking on the phone with Richardson. Within minutes, Richardson drove an SUV into Young's neighborhood. Aderhold was in the front passenger seat of the SUV, facing the side of the street Young's house was on.

Testimony at trial diverged about what happened next. Johnson testified that he heard approximately three gunshots while inside the house, grabbed a pistol, exited through the back door, and ran along the side of the house to the front. On the street in front of the house, Johnson saw Richardson leaning out of an SUV shooting a handgun at him and Young. Johnson also witnessed Young shooting at Richardson, and Johnson began shooting at Richardson as well until his gun jammed, at which point he ran inside the house, reloaded, and then ran back outside through the front door. Johnson testified that he did not see who started shooting first because he

4

was inside; he did not know whether it was Richardson or Young.

Young testified that, while he was standing in front of his house, he saw Richardson driving up in an SUV and heard gunshots coming from the direction of the street where the SUV was driving. Young assumed Richardson was shooting at him, although he could not see whether Richardson had a gun. Young began shooting at the SUV. At that moment, Young could not see Johnson, but believed he was outside by the side of the house when the shooting began, explaining that he thought so "because [Johnson was] still over there, like, spazzing out and stuff, pacing back and forth . . . talking to himself and stuff." Young testified that, two months later, Johnson told him that he was the one who started shooting first, not Richardson. Johnson testified that he never told Young that he shot first and noted that he and Young were no longer friends due to a later incident.[3]

According to testimony from Young, Johnson, and others in the

---

[3] During trial, Young testified that he faced murder charges for a later, unrelated shooting. Johnson testified that he was also involved in that shooting but was not charged.

neighborhood, Richardson stopped the SUV a few houses away, exited, and ran to a neighbor's house to find help. Young and Johnson went back inside Young's house and waited for police to arrive. Richardson got back in the SUV, but a police officer responding to the scene stopped and apprehended him before he could leave the neighborhood. The officer found Aderhold dead in the passenger seat, bleeding from a gunshot wound.

Investigators retrieved a .38-caliber revolver from behind the driver's seat in the SUV and a .40-caliber pistol underneath Aderhold's body. The gun behind the driver's seat contained five spent shell casings, but the gun underneath Aderhold was fully loaded. Investigators also retrieved a 9mm pistol from Young and a .45-caliber pistol from Johnson. Several 9mm and .45-caliber casings were recovered from the scene. The medical examiner testified that Aderhold's cause of death was a .45-caliber bullet that entered through his right shoulder and penetrated his head. Of the three shooters, only Johnson used a .45-caliber pistol.

That evening, Young and Johnson were taken to the police

6

station where Detective Nikita Moss interviewed them separately after they waived their *Miranda*[4] rights.[5] During his interview, Johnson said that he heard gunshots while inside Young's house, ran outside through the back door, and began shooting back. Additionally, Johnson told Detective Moss during his interview that the initial "three shots didn't come from [Young's] gun." At trial, Johnson gave a similar account and admitted that he implicated Richardson, but he testified that he did not know who shot first.

During Young's interview, he told Detective Moss that he saw Richardson driving down the street "flashing" a handgun and that he saw Richardson shoot first. At trial, Young admitted he told Detective Moss that Richardson shot first, but he repeatedly testified that he lied during that interview and did not actually see who shot first.

While under direct examination at trial, Detective Moss

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).
[5] Young, Johnson, and Detective Moss testified regarding Young's and Johnson's out-of-court interview statements, and a video of Young's interview was played for the jury.

testified as follows regarding her interviews of Young and Johnson:

> STATE: What about Dominique Young, while you talked to him, did he talk freely to you?
> MOSS: Yes.
> STATE: Did he speak as if what he said was rehearsed?
> MOSS: No.
> STATE: Did every detail that he gave to you, did it sound from talking with both Jabari Johnson and Dominique Young as if they were attempting to give you the same story?
> MOSS: No, ma'am.
> STATE: And why do you say that?
> MOSS: From details that Dominique gave, some were not the same as Jabari's. For instance, Dominique stated that Jabari was outside with him and ran to the side of the house, but Jabari said he walked outside when he heard the shots, ran back through the house to the side of the house.
> STATE: And were both of them talking about various times? Like, in other words, as they are talking to you, are they talking conversationally?
> MOSS: Yes.
> STATE: Okay. And did they seem as if they were searching for what the truth was while they were talking to you?
> MOSS: Yes.
> STATE: Did they seem to have trouble figuring out or telling you what the truth was?
> MOSS: What do you mean?
> STATE: What I mean is, did they seem to have any trouble telling you what they were recounting?
> MOSS: No.
> STATE: And was the information that they were recounting coming freely?

8

MOSS: Yes.

Richardson's trial counsel did not object to this testimony.

2. On appeal, Richardson contends that — when Detective Moss answered "yes" to the prosecutor's question, "[D]id they seem as if they were searching for what the truth was while they were talking to you?" — Detective Moss improperly bolstered Young's and Johnson's interview statements that Richardson shot at them first and they only returned fire in self-defense. Richardson argues that the trial court committed plain error by admitting Detective Moss's testimony at trial and that his trial counsel was ineffective for not objecting to the testimony. We hold that Richardson has failed to show plain error or ineffective assistance of counsel.

We have explained that, pursuant to OCGA § 24-6-620,

> a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury. When a witness's statement does not directly address the credibility of another witness, however, there is no improper bolstering. And when we evaluate whether testimony constitutes improper bolstering, we consider the disputed testimony in context.

9

*Brown v. State*, 302 Ga. 454, 460-461 (2) (b) (807 SE2d 369) (2017) (citations and punctuation omitted).

(a) We apply the plain-error standard to evidentiary rulings to which the appellant did not object at trial. *Pender v. State*, 311 Ga. 98, 111 (3) (856 SE2d 302) (2021); OCGA § 24-1-103 (d). To establish plain error, Richardson "must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Carter v. State*, 317 Ga. 689, 693 (2) (895 SE2d 295) (2023) (citation and punctuation omitted). However, if Richardson fails to show just one of these elements, we need not analyze the rest. Id.

Any error here was not clear and obvious beyond reasonable dispute. "For an error to be obvious for purposes of plain[-]error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *Grier v. State*, 313 Ga. 236, 242 (3) (b) (869 SE2d 423) (2022) (citation and punctuation

omitted). We have interpreted OCGA § 24-6-620 to mean that a witness may not "*directly* address the credibility of another. . . ." *Brown*, 302 Ga. at 460-461 (2) (b) (emphasis supplied). But our precedents permit a witness to still testify about another witness's statements in ways that do not directly comment on that witness's credibility. See, e.g., *Pender*, 311 Ga. at 113 (3) ("While it would have been improper for the detective to testify about whether he believed [the witness] was telling the truth, it was permissible for the detective to discuss whether [the witness's] statements to him . . . were consistent with other information. . . ."); *Ivey v. State*, 305 Ga. 156, 161-162 (2) (c) (824 SE2d 242) (2019) (holding that a detective's testimony that the defendant's "demeanor changed . . . you could tell that the wheels were turning" was not a "direct comment on [the defendant's] veracity"); *Harris v. State*, 304 Ga. 652, 657 (2) (c) (821 SE2d 346) (2018) (holding that a detective's testimony that shooting victims "tell you the whole story about what happened" and "that is basically the pattern that [I] saw here" was not a direct comment on

11

the victim witness's credibility).[6]

Here, we consider the "disputed testimony in context." *Brown*, 302 Ga. at 461 (2) (b). Considering the other questions asked of Detective Moss, it appears her testimony only explained *how* Young and Johnson said what they said, which is not necessarily a direct comment on their credibility. Indeed, the next question from the prosecutor was whether Young and Johnson had "trouble figuring out or telling you what the truth was," which the prosecutor rephrased to, "*What I mean is*, did they seem to have any trouble telling you what they were recounting?" Depending on context, a mere reference to "the truth" does not necessarily indicate direct testimony on whether one is telling the truth. See *Bedford v. State*, 311 Ga. 329, 335-336 (4) (857 SE2d 708) (2021) (holding that, in context, a witness's testimony that "the truth stays very similar"

---

[6] We note that this Court has often used the words "credibility" and "veracity" interchangeably in analyzing OCGA § 24-6-620. See, e.g., *Harris*, 304 Ga. at 657 (2) (c) ("Viewed in context, Detective Puhala's testimony was not a direct comment on Ellison's veracity. When a witness's statement does not directly address the credibility of another witness, there is no improper bolstering." (citation and punctuation omitted)). In so doing, we have not ascribed different meanings to those words, and we likewise ascribe none here.

was not improper bolstering because it only addressed whether another witness's statements were consistent with other evidence), disapproved of on other grounds in *Clark v. State*, 315 Ga. 423, 436 (3) (b) n.16 (883 SE2d 317) (2023). In context here, Detective Moss's use of the phrase "searching for what the truth was" did not directly address the credibility of Young and Johnson but instead focused on their demeanors. See *Ivey*, 305 Ga. at 162 (2) (c). Accordingly, we hold that Detective Moss's testimony was not a clear and obvious case of improper bolstering, so Richardson has failed to establish plain error from the admission of this testimony. See *Jones v. State*, 299 Ga. 40, 44 (3) (785 SE2d 886) (2016).

(b) To show ineffective assistance of counsel for his trial counsel's failure to object to Detective Moss's testimony, Richardson "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Harris*, 304 Ga. at 654 (2) (citation and punctuation omitted) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)).

13

As with plain error, if Richardson fails to meet the requirements of one element of the *Strickland* test, we need not analyze the other. *Harris*, 304 Ga. at 654 (2).

We hold that Richardson has failed to show that his trial counsel's performance was deficient. "To satisfy the deficiency prong, [Richardson] must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Harris v. State*, 310 Ga. 372, 384 (4) (850 SE2d 77) (2020) (citation and punctuation omitted). We have already held that this testimony was not a clear case of improper bolstering. Accordingly, we cannot say that no reasonable lawyer would have failed to object to such testimony on the grounds of improper bolstering.[7] See *Ivey*, 305 Ga.

_____

[7] That Richardson's trial counsel testified at the motion-for-new-trial hearing that she now understood the statement to be bolstering and had no strategy behind failing to object does not change our analysis. Our standard is objective reasonableness, and we are not constrained to "the subjective reasons offered by trial counsel for [her] conduct." *Lane v. State*, 312 Ga. 619, 623 (2) (a) (864 SE2d 34) (2021) (citation and punctuation omitted); *Jones v. State*, 292 Ga. 593, 600-601 (6) (d) & n.7 (740 SE2d 147) (2013) (explaining that "hindsight has no place in an assessment of the performance of trial counsel" when rejecting trial counsel's subjective belief whether testimony was improper bolstering).

14

at 162 (2) (c) ("Because [the detective's] testimony was not a direct comment on Ivey's veracity . . . Ivey has not shown that no reasonable lawyer would have failed to object to [the detective's] testimony.") (citation and punctuation omitted). Therefore, Richardson's claims fail.

*Judgment affirmed. All the Justices concur.*

Decided March 19, 2024.

Murder. Fulton Superior Court. Before Judge Farmer.

*Dillon P. McConnell*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Ruth M. Pawlak, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Michael A. Oldham, Matthew B. Crowder, Assistant Attorneys General*, for appellee.