**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 15, 2025**

# In the Court of Appeals of Georgia

A25A1036. TURNER v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Russell Todd Turner was convicted of multiple counts of sexual offenses against his step-granddaughters, N. B. and O. B. He challenges the sufficiency of the evidence as to two counts, the rape of O. B. (OCGA § 16-6-1 (a)) and the aggravated child molestation of O. B. (OCGA § 16-6-4 (c)); but the evidence permitted the jury to find he committed rape, thereby mooting Turner's sufficiency challenge as to the aggravated child molestation count, which had been merged into the rape conviction for sentencing. He also argues that the trial court erred by allowing the jury to watch a recording of a forensic interview of O. B. without redacting a comment by the interviewer that Turner asserts bolstered O. B.'s credibility; but he

did not object to the playing of the unredacted recording at trial and he has not made the showing required for a finding of plain error. So we affirm.

1. *Sufficiency of the evidence*

When evaluating the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61, LE2d560) (1979) (emphasis omitted)."As long as there is some evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." *Atkins v. State*, 342 Ga. App. 849, 851 (1) (805 SE2d 612) (2017) (citation and punctuation omitted).

Viewed in the light most favorable to the prosecution, the trial evidence showed that Turner has three step-granddaughters — sisters O. B., N. B., and M. B. — who for a period of time regularly stayed overnight at his home. In September 2022, then 17-year-old M. B. told the girls' father that Turner had sexually abused her on many of those visits. She testified at trial that he repeatedly touched her beneath her clothes, forced her to touch him beneath his clothes, and had intercourse with her. The abuse

began when she was seven or eight years old and lasted until she was eleven or twelve, when she stopped spending the night at the house.

The father then questioned then 14-year-old N. B., who told him that Turner had also sexually abused her. She testified at trial that on more than one occasion he had touched her "private part areas" beneath her clothes, had forced her to touch his penis beneath his clothes, and had intercourse with her. The abuse began when she was about five years old and lasted until a few months before Turner's arrest in this case.

At the time of these outcries, then 11-year-old O. B. was on an overnight visit with Turner. The girls' parents notified the police, and O. B. later gave two recorded forensic interviews that were played for the jury.

In her first forensic interview, O. B. denied that Turner had touched her inappropriately. But shortly thereafter O. B. told family members that she had not been truthful and asked to give another interview, which occurred later that day. During the interim her sisters did not tell her what they had talked about in their interviews, and no one told her what to say.

In her second forensic interview, O. B. stated that Turner had touched her "private area" beneath her clothes with his hand, his mouth, and his penis, had forced him to touch and put her mouth on his penis beneath his clothes, and had tried to have intercourse with her, which was very painful. She stated that the abuse had begun when she was around seven years old, had happened multiple times, and had continued through her most recent overnight visit with Turner.

At trial, O. B. testified that Turner had touched her "private area" with his hand under her clothes. When asked if he had done "anything else . . . that he shouldn't have," O. B. testified that he had but that she "d[id]n't really know how to put it." She remembered giving a forensic interview but did not remember anything she had said in it other than that Turner had "sexually touched" her.

Turner argues that this evidence was insufficient to show he committed rape because the evidence did not show the required element of penetration. See OCGA § 16-6-1 (a). "But the necessary penetration need be only slight; it is not necessary that the vagina shall be entered, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient." *Smith v. State*, 361 Ga. App. 436, 438 (1) (a) (864 SE2d 645) (2021) (citation and punctuation omitted). This may be proved by

circumstantial evidence. *Mayes v. State*, 336 Ga. App. 55, 58 (1) (783 SE2d 659) (2016).

As Turner argues, O. B. never stated that Turner penetrated her. She stated, in her second forensic interview, only that he *tried* to put his "private" in her "private." But O. B. also stated that this action by Turner "really hurt" or "hurt really bad." A "victim's testimony that [the] defendant tried to force himself into her and that this hurt her private authorizes the rational inference that [the] defendant penetrated the victim's vulva or labia with his sex organ[.]" *Skillern v. State*, 240 Ga. App. 34, 35 (1) (521 SE2d 844) (1999). Consequently, this evidence was sufficient to support Turner's conviction for the rape of O. B. See id. See also *Smith v. State*, 361 Ga. App. 436, 439 (a) (864 SE2d 645) (2021) (holding that the jury may rely on statements in a forensic interview to find an accused guilty of rape).

Because we hold that the evidence of rape was sufficient, we do not need to address Turner's challenge to the sufficiency of the evidence of aggravated child molestation. The trial court did not sentence Turner on that count because it merged with the rape count, so his challenge to the aggravated child molestation count is moot. See *Long v. State*, 287 Ga. 886, 888 (1) (700 SE2d 399) (2010).

2. *Forensic interview*

At the end of O. B.'s second forensic interview, the interviewer thanked O. B. for "being honest" and "telling the truth." Turner argues that it was error for the trial court to admit the recorded interview into evidence without redacting that statement by the interviewer. Because Turner did not object to its admission at trial we review this claim only for plain error, see *Moore v. State*, 305 Ga. 251, 255 (2) (b) (824 SE2d 377) (2019), and we find none.

"To establish plain error, the appellant must show that he did not affirmatively waive the error, that the error is clear or obvious, rather than subject to reasonable dispute, that it affected his substantial rights, and that it seriously affects the fairness, integrity or public reputation of judicial proceedings." *McIver v. State*, 321 Ga. 565, 575 (2) (b) (915 SE2d 882) (2025) (citation and punctuation omitted). Turner has not made this showing, because he has not shown an error that is clear or obvious, rather than subject to reasonable dispute.

Turner argues that the interviewer's statement to O. B. during the interview improperly bolstered O. B.'s credibility. We do not disagree. "In no circumstances

6

may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth." *Turner v. State*, 253 Ga. App. 760, 762 (2) (560 SE2d 539) (2002) (citation and punctuation omitted). The forensic interviewer thanked the victim, O. B., for "being honest" and "telling the truth." Those references to O. B. "being honest" and "telling the truth" should have been redacted from the recording of the forensic interview before it was played for the jury.

Nevertheless, we cannot say that this error was plain and obvious beyond reasonable dispute. "For an error to be obvious for purposes of plain-error review, it must be plain under the controlling precedent or in view of the unequivocally clear words of a statute or rule." *Richardson v. State*, 318 Ga. 690, 695 (2) (899 SE2d 685) (2024) (citation and punctuation omitted).

"[W]hen we evaluate whether testimony constitutes improper bolstering, we consider the disputed testimony in context." *Richardson*, 318 Ga. at 694 (2) (citation and punctuation omitted). "What is forbidden is testimony that directly addresses the credibility of the victim, i. e., 'I believe the victim; I think the victim is telling the truth.'" *Flores-Avila v. State*, 374 Ga. App. 48, 51 (2) (911 SE2d 235) (2025) (citation and punctuation omitted).

7

The context in this case is unusual, and reasonable minds could differ as to whether, within that context, the forensic interviewer's comments to O. B. should be construed as directly addressing the girl's credibility. Unlike in the authorities cited by Turner, the comments in this case were not made in trial testimony before the jury, and the forensic interviewer did not testify at all about whether or not she actually believed O. B. Compare *Patterson v. State*, 278 Ga. App. 168, 169 (628 SE2d 618) (2006) (the state's expert witness responded "no" when asked at trial if "at any time [the expert witness] ever fe[lt] like the victim made up the story that she told [the expert witness] to get back at her father" and "if [the expert witness] believed that the victim made up the allegations against [the accused] for any reason") (punctuation omitted); *Williams v. State*, 266 Ga. App. 578, 582 (2) (597 SE2d 621) (2004) (DFCS caseworker testified at trial that she "didn't feel that [the victim's interview statement] was at all a coached statement or anything like that" and that the victim "seemed very truthful and honest about this") (punctuation omitted); *Cline v. State*, 224 Ga. App. 235, 236-237 (2) (480 SE2d 269) (1997) (DFCS employee testified at trial that she "remember[ed] documenting . . . that at the time [the victim gave an interview the witness] felt [the victim] was very credible") (punctuation omitted).

8

The forensic interviewer was not explaining her thoughts about O. B.'s credibility to the jury, but was expressing thanks to O. B. in the girl's second forensic interview, during which the girl had stated that she had not been honest in an earlier interview.

Turner has not cited any authority, and we have found none, addressing impermissible bolstering in this particular context. An argument could be made that the forensic interviewer was not directly commenting on O. B.'s credibility but merely attempting to put the girl at ease in the forensic interview. Where disputed testimony was not necessarily a direct comment on a witness's credibility, our Supreme Court has held that it was not clearly and obviously improper bolstering for purposes of finding plain error. *Richardson*, 318 Ga. at 695 (2) (a). For this reason, although we believe it was error to admit the recorded interview without redaction, Turner has not shown that the error was clear and obvious and thus has not shown it was plain error. See *James v. State*, 321 Ga. 812, 818 (2) (917 SE2d 87) (2025) (holding that in the absence of controlling authority, a defendant had not shown an error that was clear and obvious beyond reasonable dispute, and so had not met his burden of showing plain error).

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*

9